UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 04-20490 Cr COOKE/McAliley

UNITED STATES OF AMERICA,

Plaintiff,

vs.

RICARDO KNIGHT,

Defendant.

_____/

NIGHT BOX
FILED

OCT 0 8 2004   JC

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

## MOTIONS TO DISMISS INDICTMENT

Defendant, RICARDO KNIGHT, by and through his attorney, Shereen J. Charlick, Assistant Federal Public Defender, files the foregoing motion seeking dismissal of the one-count indictment for the reasons set forth below.

## STATEMENT OF FACTS IN SUPPORT OF MOTIONS

According to the discovery provided by the prosecution, Mr. Knight is a lawful permanent resident, having emigrated to the United States before he reached the age of 16. He is charged with violating 18 U.S.C. § 611, a misdemeanor statute criminalizing voting in a federal election while being an alien. While the indictment itself alleges that Mr. Knight, "an alien, fully knowing he was not a United States citizen, did knowingly vote in an election held in part for the purpose of electing a candidate for federal office," *see* Indictment (attached as Exhibit A), the statute does not require even knowledge. It provides:

**Voting by aliens**

It shall be unlawful for any alien to vote in any election held solely or in part for the purpose of electing a candidate for the office of President, Vice President . . . .

18 U.S.C. § 611(a). The statute then lists a number of exceptions by which aliens could be free from prosecution. *See* 18 U.S.C. § 611(a)(1)-(3); § 611(c)(1)-(3).

## I. TITLE 18 U.S.C. 611 LACKS ALL *MENS REA*, THUS IS UNCONSTITUTIONAL.

### A. Introduction

Mr. Knight is charged with violating 18 U.S.C. § 611, a misdemeanor statute criminalizing voting in a federal election while being an alien. While the indictment itself alleges that Mr. Knight, "an alien, fully knowing he was not a United States citizen, did knowingly vote in an election held in part for the purpose of electing a candidate for federal office," *see* Indictment (attached as Exhibit A), the statute does not require even knowledge.

The statute violates due process because it is both overbroad and impermissibly vague – it criminalizes two wholly innocent acts, being an alien and voting, and does so deliberately, excluding any attendant mens rea. *See Coalutti v. Franklin*, 439 U.S. 379 (1979) (constitutional challenges to a statute's lack of mens rea are closely related to vagueness challenges); *United States .v Cordoba-Hincapie*, 835 F. Supp. 2d 485, 513 (E.D.N.Y. 1993) ("the constitutional aversion is to capturing the unwitting person who did not seek to violate the law"). Under the Supreme Court's jurisprudence on mens rea, set forth in detail below, statutes which lack all mens rea are rare and generally, where it is consistent with congressional intent, some form of mens rea is "implied," or read into the statute so that it comports with due process. *See Dennis v. United States*, 341 U.S. 495, 500 (1951); *Morissette v. United States*, 342 U.S. 250-251 (1952). The government has already tried to do this here – it has imported a "knowledge" element with respect to the element of alienage. However, this statute cannot be saved by implying mens rea because as is also set forth below in greater detail, Congress considered mens rea here and deliberately excluded it from the offense elements, thus to imply any mens rea would contravene congressional intent, *see Morissette*, 342 U.S. at 247, and implying mens rea in this manner also contravenes separation of powers principles. *See Buckley v. Valeo*, 424 U.S. 1 (1976). Finally, even if this Court believes it could imply mens rea to save this statute, the government's solution, codified in the indictment, that one must only know he is an alien, does not go far enough. To comport with the Supreme Court's cases and due

process strictures, the Court must imply a specific intent mens rea or knowledge that voting while an alien was somehow unauthorized or contrary to law. Specific intent mens rea is necessary in this case in order to separate wrongful conduct from otherwise innocent conduct. *See Carter v. United States*, 530 U.S. 255, 269 (2000) (discussing situations which require reading specific intent into statutes). Reading such intent into the statute "'narrows the scope of the enactment by exempting innocent or inadvertent conduct from its proscription.'" *See National Mobilization Comm. v. Foran*, 411 F.2d 934, 937 (7th Cir. 1969).

**B.      The Statute Is Overbroad And Vague Because It Deliberately Lacks All Mens Rea.**

It is clear that Congress considered mens rea in connection with 18 U.S.C. § 611 but deliberately omitted it as part of the offense elements. Rather, after listing the offense elements, that one is an alien and votes in a specified election, the statute then lists a number of exceptions by which aliens could be free from prosecution. *See* 18 U.S.C. § 611(a)(1)-(3); § 611(c)(1)-(3). One of these includes, as part of a three-part exception, someone who <u>reasonably believes</u> he or she is a citizen, *see* 18 U.S.C. § 611(c)(3) (emphasis added), but only if that person also resided permanently in the United States before age 16 and possibly if the person's parents are also citizens of the United States. 18 U.S.C. § 611(c)(1)-(2).[1] There is no specification regarding who bears the burden of demonstrating the exception(s). Thus, individuals who mistakenly believe that they have properly naturalized but who did not, and who do not fulfill the other exceptions (or all parts thereof) set forth in section 611(c) have no defense. Individuals brought here from abroad as children of undocumented or adoptive parents, who never realize they are not citizens, who vote with innocent intent, have no defense. Similarly, individuals who, when an objective standard is applied, did not "reasonably" believe they were citizens of the United States or individuals who have never known

---

[1]   It appears that sections 611(c)(2) and (3), providing an exception from prosecution for those who permanently resided in the U.S. prior to age 16 and those who reasonably believed they were U.S. citizens apply in tandem as these clauses are joined by the word "and." *See* 18 U.S.C. § 611(c)(2)-(3).  However, section 611(c)(1) may stand on its own, providing an exception for the children of parents who are U.S. citizens, either by birth or naturalization.

that as aliens, they were not permitted to vote, an otherwise "innocent" activity,[2] have no defense under this statute. That one part of the possibly tripartite exception contains an objective[3] form of mens rea means only that Congress thought about mens rea's place in this statute and rejected it.

"The definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute." *Liparota v. United States*, 471 U.S. 419 (1985). "[D]etermining the mental state required for commission of a federal crime requires 'construction of the statute and . . . inference of the intent of Congress.'" *Staples v. United States*, 511 U.S. 600, 605 (1994) (citations omitted, elipses in original). In this case, Congress made it easy – they deliberately omitted all mens rea in the offense elements, relegating only the mens rea of the objectively reasonable person to one part of a possibly three-part exception.

The deliberate and complete absence of any mens rea is fatal to this criminal statute and this Court must strike it down. Statutes which lack all mens rea are universally disfavored in criminal law. *Liparota*, 471 U.S. 419; *United States v. United States Gypsum Co*, 438 U.S. 422, 438 (1978). In the criminal law, there is a strong presumption in favor of scienter. *Id*. Beginning with first principles, the Supreme Court's mens rea cases provide that:

> The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil . . . . Unqualified acceptance of this doctrine in English common law in the Eighteenth Century was indicated by Blackstone's sweeping statement that <u>to constitute any crime there must first be a "vicious will."</u>

*Morissette v. United States*, 342 U.S. 246, 250-251 (1952) (emphasis added). "'It is alike the general

---

[2] Voting is more than an otherwise "innocent activity." It is considered one's civic duty, such as paying taxes – something which aliens do. Voting is a highly encouraged activity, replete with television ads encouraging people to register to vote, television programs, such as "Rock the Vote," people on street corners and at certain government institutions, such as the Department of Motor Vehicles and the like, registering individuals to vote.

[3] Ordinarily, mens rea is phrased as knowledge or willfulness and it is not limited to what would be known as an objectively reasonable matter.

rule of law, and the dictate of natural justice, that to constitute guilt there must be not only a wrongful act, but a criminal intention. Under our system, (unless in exceptional cases), both must be found by the jury to justify a conviction for crime." *Id.* at 274.

*Morissette*, the landmark Supreme Court case regarding mens rea, considered a statute, 18 U.S.C. § 641, which provided: "Whoever embezzles, steals, purloins or knowingly converts to his use or the use of another or without authority, sells conveys or disposes of any record, voucher, money or thing of value of the United States shall be fined." In that case, the trial judge, affirmed by the court of appeals, construed the word "knowingly" to mean only that if one knew that he had converted or taken the property, he was guilty of the crime notwithstanding any innocent intent in the taking of the property. The Supreme Court reversed, concluding that even though Congress did not specify any criminal intent in the statute, the strong presumption in favor of mens rea sufficient to distinguish innocent intent from culpable, required that the statute be construed as containing mens rea. *Id.* at 250. Even though the statute specified only "knowing conversions," when used in that context,

> knowing conversion requires more than knowledge that defendant was taking the property into his possession. He must have had knowledge of the facts, though not necessarily the law, that made the taking a conversion. In the case before us, whether the mental element that Congress required be spoken of as knowledge or as intent would not seem to alter its bearing on guilt for it is not apparent how Morissette could have knowingly or intentionally converted property that he did not know could be converted, as would be the case if it was in fact abandoned or it he truly believed it to be abandoned and unwanted property."

*Id.* at 271.

In *Liparota,* 471 U.S. 419, the Supreme Court held that criminal statutes which lack all mens rea are disfavored in criminal law, and to interpret a statute in a way which dispenses with mens rea would be to criminalize a broad range of innocent conduct. *Id.* at 426. *Liparota* involved a statute criminalizing knowingly using, acquiring, possessing or transferring food stamps in any manner not

authorized by the particular statute. There, the government argued that "no mens rea or 'evil-meaning mind' . . . [was] necessary for conviction," meaning as long as the defendant knew that he possessed food stamps, he did not have to know that his possession was "unauthorized" to be guilty under the statute. The defendant argued that this interpretation "dispensed with the only morally blameworthy element in the definition of the crime." *Id.* at 423. Citing *Morissette*'s discussion of how "an injury can amount to a crime only when inflicted by intention," *id.* at 425 (citing *Morissette*, 342 U.S. at 230), the Court held that not only the possession but the unauthorized nature of it, had to be knowing. *Liparota*, 471 U.S. at 425 ("Absent indication of contrary purpose in the language or legislative history of the statute, we believe that [the statute] requires a showing that the defendant knew his conduct to be unauthorized by statute or regulations").[4]

Again in *United States v. X-Citement Video*, 513 U.S. 64, 71-72 (1994), the Supreme Court rejected the "most  grammatical reading of the statute criminalizing "knowingly transporting, shipping, receiving . . . a visual depiction . . . which involves the use of a minor engaging in sexual explicit conduct." This reading criminalized only the knowing transportation where the defendant was unaware of the age of actor engaging in the sexual explicit conduct. *Id.* at 71-72. Citing *Morissette*, *Liparota* and *Staples v. United States*, 511 U.S. 600 (1994), the Court read a knowledge

---

[4] Title 18 U.S.C. § 611 criminalizes voting by an alien, who is by virtue of noncitizenship, unauthorized to vote. One may argue that aliens ought to know that they cannot vote, thus, not mens rea is necessary. *Liparota* criminalizes unlawful possession of food stamps by individuals who were not authorized to possess them. There, one could argue that everyone ought to know that only certain people qualify for food stamps, thus, no mens rea regarding obtaining the food stamps in an unauthorized manner, should be required. Notwithstanding what everyone ought to know, the Supreme Court held that because possession of food stamps was an innocent, as opposed to criminal act, to obtain a conviction under the statute, the government must prove that the defendant knew not only that he possessed the food stamps but that such possession was unauthorized by statute or regulation. *Liparota*, 471 U.S. at 425.

requirement regarding the age of the actor engaging in the sexually explicit conduct into the statute. *Id.* at 72 ("*Morissette,* reinforced by *Staples,* instructs that the presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct."). That level of mens rea was required so that "[c]riminal intent serves to separate those who understand the wrongful nature of their acts from those who do not . . . ." *X-Citement Video,* 513 U.S. at 72 n.3.

The Ninth Circuit has already addressed a similar issue with 18 U.S.C. § 1425, which criminalizes knowingly acquiring naturalization contrary to law. The court held that the term "knowingly" meant not only that the act of acquiring naturalization had to be knowing but that knowingly had to apply to the terms "contrary to law" as well. *United States v. Pasillas-Gaytan,* 192 F.3d 864, 867 (9th Cir. 1999).

In *Pasillas-Gaytan,* the court rejected the government's argument that all a defendant had to do was to "knowingly" procure naturalization because "applying for naturalization is almost always a voluntary, intentional act. We believe that the statute requires a culpable state of mind as well. The government's construction of the statute would criminalize completely innocent conduct and would essentially impose strict liability upon defendants." *Id.* at 868. Because "[t]he general rule is that criminal statutes do not impose strict liability," and because [t]he existence of mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence," the statute had to be construed "with the general presumption that the defendant must know the facts that make his conduct illegal." *Id.*[5]

---

[5] The court also rejected the government's "public welfare" offense here because those offenses are "a narrow class, limited to "statutes that regulate potentially harmful or injurious items or some dangerous or deleterious substance." *Id.* at 869 (footnotes omitted).

## C. **Congress' Exclusion of Mens Rea Was Deliberate**.

The above cases illustrate the importance of applying mens rea to criminal statutes. Here, Congress' exclusion of all mens rea, even a knowledge requirement in this statute, indicates clearly that it intended to eliminate mens rea from this offense. Mens rea exists only in one part of a multi-part exception to the statute where the only "mens rea" to speak of is some objectively reasonable but mistaken belief that one is a United States citizen – and it does not appear that standing alone, such a belief could constitute a defense. This deliberate absence in the offense elements coupled with the language of the exception is a clear indication of congressional intent here. "Congress says in a statute what it means and means what it says there." *Hartford Underwriters v. Union Planters Bank*, 530 U.S. 1, 6 (2000). As noted, this renders 18 U.S.C. § 611 overbroad – those people who reasonably and even unreasonably do not know they are aliens, either due to errors in the naturalization process, errors in adoption proceedings, lack of knowledge about their parents' origins, mental retardation, or for any myriad of other reasons, are guilty of this crime. Those people who do not know that as an alien, they cannot vote,[6] are guilty of this statute. Voting is not only an intrinsically "innocent" act but something which our society believes is an obligation, something one should do as a civic duty. As drafted by Congress, this statute fails to comport with the standards set forth in *Morissette*, *Liparota*, *Staples* and *X-Citement Video*.

If a statute is genuinely overbroad, courts may strike it down, even if a defendant's conduct could be prohibited under a more narrowly tailored law. *NAACP v. Button*, 371 U.S. 415, 431 (1963). That the government has offered to prove knowledge as it wrote such requirement into the

---

[6] After all, many aliens pay taxes, have driver's licenses, social security numbers, serve in the military, obtain business licenses, and have all the other trappings associated with the benefits and burdens of an American citizen.

8

indictment, at trial, does not save an unconstitutional statute. *See Virginia v. Hicks*, 539 U.S. 113, 123 (2003). While courts have been willing to read mens rea into statutes, they will not do so if it would contravene congressional intent. A federal statute should be construed narrowly to avoid overbreadth only if it can be so construed. *United States v. Wallington*, 889 F.2d 573, 576 (5th Cir. 1989).

While the *Morissette* Court was willing to read mens rea into that statute, it recognized "[o]f course, the purpose of every statute would be 'obstructed' by requiring a finding of intent, if we assume that it had a purpose to convict without it." *Morissette*, 342 U.S. at 247. The Court cannot rewrite these statutes to comply with the Constitution where doing so violates plain statutory language and underlying congressional intent. "[C]ourt[s do not enjoy] the prerogative to ignore the legislative will in order to avoid constitutional adjudication; 'although the [Supreme] Court will often strain to construe legislation so as to save it against constitutional attack, it must not and will not carry this to the point of perverting the purpose of a statute,' . . . or judicially rewriting it." *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 841 (1986) (quoting *Aptheker v. Secretary of State*, 378 U.S. 500, 515 (1964) and *Scales v. United States*, 367 U.S. 203, 211 (1961)) (internal quotations omitted). *See also X-Citement Video, Inc.*, 513 U.S. at 86 (Scalia, J., dissenting) ("Not every construction, but only 'every reasonable construction must be resorted to, in order to save a statute from unconstitutionality.'") (quotations omitted); *see also Brogan v. United States*, 522 U.S. 398 (1998) (Court demonstrated aversion to such "judicial legislation" by rejecting the "exculpatory no" doctrine: "it is not, and cannot be, our practice to restrict the unqualified language of a statute to the particular evil that Congress was trying to remedy -- even assuming that it is possible to identify that evil from something other than the text of the statute itself."). Finally, any

9

efforts to rewrite section 611 to somehow insert mens rea (as the government has tried to do in the indictment), where doing so contravenes congressional intent, violates the Separation of Powers doctrine. *See Buckley v. Valeo,* 424 U.S. 1, 122 (1976) ("The Framers regarded the checks and balances that they had built into the tripartite Federal Government as a self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other"). In sum, title 18 U.S.C. § 611 which criminalizes otherwise innocent activity without any mens rea whatsoever is overbroad and violates due process principles.

There is no fix for this statute, the Court must adhere to the (unconstitutional) intent of Congress, strike the statute down, and leave any amendment to the legislative branch of our government charged with that responsibility.

### D. This Is Not A "Public Welfare" Offense.

This statute cannot survive absent mens rea. The Supreme Court has only permitted this result in extremely limited circumstances. The Court has labeled these offenses "public welfare offenses," and characterized them as those where "penalties commonly are relatively small, and conviction does not grave damage to an offender's reputation." *Morissette,* 342 U.S. at 260. The reasoning underlying these public welfare offenses are that the "interest of the larger good . . . puts the burden of acting at hazard upon a person otherwise innocent but standing in responsible relation to a public danger. *Id.* But the Supreme Court warned: "'Hardship there doubtless may be under a statute which thus penalizes the transaction though consciousness of wrongdoing be totally wanting.'" *Id.* (quoting *United States v. Dotterweich,* 320 U.S. 277, 280-81 (1943)). The Supreme Court recognizes that criminal statutes which lack all mens rea are both exceptionally rare and exceptionally harsh. *See id.*; *see also Liparota,* 471 U.S. at 432-433.

In *Liparota,* 471 U.S. at 433, the Supreme Court defined those rare "public welfare offenses" which lack all mens rea as "a type of conduct that a reasonable person should know is subject to

stringent public regulation and may seriously threaten the community's health or safety." *Id.* It discussed the few instances where a complete lack of mens rea is permissible: such as the possession of hand grenades, *see United States v. Freed*, 401 U.S. 601 (1971) or the selling of adulterated drugs, *see Dotterweich*, 320 U.S. at 284, and noted that possession of an unregistered firearm, even though deemed "dangerous" to the public, was not one of these "public welfare offenses." *Liparota*, 471 U.S. at 432-433 (citation omitted).

Similarly, it is no excuse for a lack of mens rea that this crime is a misdemeanor as opposed to a felony as the Supreme Court in *Morissette* included misdemeanors in its classification of crimes serious enough to warrant implying a mens rea when such was absent from the statute. *See* 342 U.S. at 253.

This statute, criminalizing voting while an alien, does not deal with "deleterious" substances which pose widespread danger to public health or safety, thus, the limited "public welfare" exception is inapplicable.

**E. If This Court Believes It Can Save The Statute By Reading In Mens Rea, It Must Read In "Specific Intent" In Order To Separate Innocent or Inadvertent Conduct From Wrongful Conduct.**

"'It is alike the general rule of law, and the dictate of natural justice, that to constitute guilt there must be not only a wrongful act, but a criminal intention. Under our system, (unless in exceptional cases), both must be found by the jury to justify a conviction for crime. *Morissette*, 342 U.S. at 274. In counseling against construing statutes to lack all mens rea, the Supreme Court cites with approval the following passage: "[t]o inflict substantial punishment upon one who is morally entirely innocent, who caused injury through reasonable mistake or pure accident, would so outrage the feelings of the community as to nullify its own enforcement."' *Id.* at 262 n.20 (quoting Francis

Bowles Sayre, *Public Welfare Offenses*, 33 Col. L. Rev. 55, 56 (1933)).

Here, 18 U.S.C. § 611 lacks all mens rea. If this Court rejects the previous arguments that the statute suffers from an irremediable defect, the only remedy is to imply mens rea sufficient to separate innocent from wrongful conduct. *See X-Citement Video*, 513 U.S. at 72; *see also id.* at 81 ("The presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct *even when the plain text of the statute says otherwise*") (emphasis in original). Indeed, it is the rule rather than the exception that courts read mens rea into the statute even where it is otherwise absent. *See, e.g., Morissette*, 342 U.S. at 250; *Liparota*, 471 U.S. at 425; *Staples*, 511 U.S. 600; *X-Citement Video*, 513 U.S. at 71-72.[7]

At a minimum, because the statute criminalizes otherwise wholly innocent acts, *i.e.,* being an alien and voting, if this Court were to read a mens rea into the statute to save it, it would have to read a specific, rather than general intent mens rea into this statute. *See Carter*, 530 U.S. at 269 (Court noted that "some situations may call for implying a specific intent requirement into statutory text"). In *Carter*, the Court indicated that such a circumstance was called for when the statute would otherwise "fail to protect the innocent actor," *i.e.,* the person who committed the actus reus but without intending the harm the statute sought to prevent. *See id.*

The Supreme Court has also indicated that specific and general intent are not the only forms of mens rea. *See Liparota*, 471 U.S. at 423 n.5 ("We have also recognized that the mental element in criminal law encompasses more than the two possibilities of 'specific' and 'general' intent") (citations omitted). Mr. Knight believes that specific intent or willfulness should be required to

---

[7] Of course, unlike 18 U.S.C. § 611, usually the word "knowingly" appeared somewhere in the statute. *See, e.g., Morissette*, 342 U.S. at 250; *X-Citement Video*, 513 U.S. 71-72; *Liparota*, 471 U.S. at 425.

separate culpable from innocent conduct in this case. At the very least, this Court should read the same type of mens rea into this statute, 18 U.S.C. § 611, that the Supreme Court read into the food stamp statute in *Liparota* – it labeled this knowledge, which is ordinarily read as "general intent" however, it required that the "petitioner knew that his conduct was unauthorized or illegal." 471 U.S. at 434;[8] *see also Pasillas-Gaytan*, 199 F.3d at 868 ("[T]he defendant must know the facts that make his conduct illegal"). That level of mens rea is required here so that "[c]riminal intent serves to separate those who understand the wrongful nature of their acts from those who do not . . . ." *See X-Citement Video*, 513 U.S. at 72 n.3

According to *Liparota*, "requiring mens rea is in keeping with our longstanding recognition of the principle that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." 471 U.S. at 427. Applying the rule of lenity "ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor and the court in defining criminal liability." *Id.* Here, application of the Rule of Lenity requires that the appropriate mens rea for this statute is specific intent or a knowledge requirement which ensures that, Mr. Knight "knew that his conduct was unauthorized or illegal." *See id.*

II.     **THE MODEL GRAND JURY INSTRUCTIONS UNCONSTITUTIONALLY AND IMPROPERLY CIRCUMSCRIBE THE GRAND JURY'S AUTHORITY AND MISLEADS THEM REGARDING THE PROBABLE CAUSE DETERMINATION**

---

[8] The Court did not require proof that the defendant knew the precise law or regulation but the government did have to demonstrate that he knew his actions were unlawful to obtain a conviction. *Liparota*, 471 U.S. at 434.

A.      **Introduction**

The Administrative Office of the United States Courts promulgated Model Grand Jury Instructions, adopted by the Judicial Conference in 1986 and which it recommends be given to new grand juries at the beginning of their service. United States v. Marcucci, 299 F.3d 1156, 1159 (9th Cir. 2002). Mr. Knight has reason to believe that his Grand Jury was instructed pursuant to the Model Instructions. If this was the case, then his Grand Jury was fatally misinstructed and his indictment must be dismissed; if this was not the case, he seeks production of the Grand Jury instructions given to his Grand Jury so that he may see if they suffer from the same infirmities as the Model Instructions. The general charge to the Grand Jury is not covered by Federal Rule of Criminal Procedure 6(e)'s secrecy requirements. United States v. Alter, 482 F.2d 1016, 1029 n.21 (9th Cir. 1973) ("Alter was entitled to know the content of the court's charge to the grand jury) (citing U.S. Judicial Conference Committee on the Operation of the Jury System, Handbook for Federal Grand Jurors 10 ) (1971)).[9]

These infirmities in these general instructions to the Grand Jury include, among other things, instructing the Grand Jury that it "cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal. That is to be determined by Congress and not by you," and "when deciding whether or not to indict, you should not be concerned about punishment in the event of conviction. Judges alone determine punishment." *Model Grand Jury Charge* (attached as Exhibit B) at 1. Furthermore, the Grand Jury is instructed that its sole purpose is "to determine if there is sufficient evidence to justify a formal accusation against a person," *Model Grand Jury Charge* at 2, that its

_____

[9] In Marcucci, the general instructions to the Grand Jury are part of the record.

14

task is to determine whether the government's evidence as presented . . . is sufficient to cause you to conclude that there is probable cause to believe that the accused is guilty of the offense charged against him. To put it another way, you should vote to indict where the evidence presented to you is sufficiently strong to warrant a reasonable person's believing that the accused is probably guilty of the offense with which he is charged.

*Model Grand Jury Charge* at 7. This instruction, that all the Grand Jury can and must do is to decide if there is "probable cause" to believe someone committed a crime, is given after the Grand Jury has already been told that these very same "suspects" were already taken before a Magistrate, who already held a "preliminary hearing" and determined there was probable cause to believe that the person has committed a crime. *See Model Grand Jury Charge* at 3.

**B.     The District Court's Instructions Forbidding Grand Jurors From Considering the Wisdom of Any Law Passed By Congress And the Potential Penalties Contradict Both The Supreme Court's Description of the Authority of the Grand Jury and Its Recognition That Courts Possess Little Supervisory Power Over the Grand Jury.**

The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury... ." U.S. Const., Amend. V. See also United States v. Calandra, 414 U.S. 338, 343 (1974) (citation omitted) ("In this country the Founders thought the grand jury so essential to basic liberties that they provided in the Fifth Amendment that federal prosecution for serious crimes can only be instituted by a 'presentment or indictment of a Grand Jury'"). The Supreme Court has characterized the grand jury "as a primary security to the innocent against a hasty, malicious and oppressive persecution; it serves the invaluable function in our society as standing between the accuser and the accused, whether the latter be an individual, minority group, or other, to determine whether a charge is founded on reason or was dictated by an intimidating power or by malice and personal ill will." Wood v. Georgia, 370

15

U.S. 375, 390 (1962).

In order to fulfill its role in "standing between the accuser and the accused," the Grand Jury must be "*independent* of both the prosecuting attorney and the court."   See United States v. Williams,504 U.S. 36, 49 (1992).   The Supreme Court has recognized "[t]he necessity to society of an independent and informed grand jury."   Wood, 370 U.S. at 390; accord Stirone v. United States, 361 U.S. 212, 218 (1960) (emphasizing that independence of the grand jury is essential to the "very purpose" of the grand jury right).   Indeed, "an infringement [of the grand jury's independence] may result in grave doubt as to a violation's effect on the grand jury's decision to indict." Bank of Nova Scotia v. United States, 487 U.S. 250, 259 (1988).

> Here, the grand jurors' independence was undercut when they were instructed that they
> cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether
> or not there should or should not be a federal law designating certain activity as
> criminal.  That is determined by Congress and not by you.  Furthermore, when
> deciding whether or not to indict, you should not be concerned about punishment in
> the event of conviction.  Judges alone determine punishment.

*Model Charge* at 2.  No authority supports the notion that a district court judge may take affirmative steps to limit the subject matter a grand jury may consider.  See generally Williams, 504 U.S. 36 (drastically limiting the supervisory powers of the courts over the grand jury).

Because the grand jury has "the power to charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a non-capital offense[,] all on the basis of the same facts [,]" Vasquez v. Reyes-Hillery, 474 U.S. 254, 263 (1986), it surely can consider punishment: how else is it to exercise the power that the Supreme Court has confirmed that it possesses?  "This instruction improperly limits the jurors' discretion regarding the proper scope of application of federal criminal law, as well as matters of sentencing."

16

Marcucci, 299 F.3d 1156, 1169 (Hawkins, J., dissenting); see also Gaither v. United States, 413 F.2d 1061, 1066 n.6 (D.C. Cir. 1969) ("Since it has the power to refuse to indict even where a clear violation of law is shown, the grand jury can reflect the conscience of the community in providing relief where strict application of the law would prove unduly harsh") (citation, internal quotation omitted). The grand jury's evaluation of the law at issue in a given case -- does the statute prohibit murder or distribution of medicinal marijuana to AIDS patients -- and the penalties -- is the offense a serious felony or a misdemeanor -- surely affects their assessment of "the *need* to indict." Vasquez, 474 U.S. at 264 (emphasis added).[10]

Justice Blackmun's dissent in Bordenkircher v. Hayes, 434 U.S. 357 (1978), provides an illustration of this point. He observed that "it is conceivable that *a properly instructed* Kentucky grand jury, in response [to the very severe penalties associated with a habitual offender statute], would have refused to subject petitioner to such an onerous penalty for his forgery charge" even though there was sufficient evidence. Id. at 368 n.2 (1978) (Blackmun, J., dissenting) (emphasis added).

Nor is there any authority for the decision to circumscribe the subject matter of the grand jurors' inquiries. In fact, placing such limitations on the grand jurors "run[s] counter to the whole history of the grand jury institution, in which lay [persons] conduct their inquiries unfettered by technical rules." Costello v. United States, 350 U.S. 359, 364 (1956). In evaluating whether a court could order prosecutors to disclose exculpatory evidence to grand jurors as an exercise of supervisory power, the Supreme Court held that "as a general matter at least, no such 'supervisory'

---

[10]  See George D. Edwards, The Grand Jury 35-36 (1906) (describing the functioning of grand juries in rejecting cases in which there is probable cause but which the grand jury views as not serious enough to merit prosecution).

17

judicial authority exists." <u>Williams</u>, 504 U.S. at 47.

In light of "[t]he grand jury's functional independence from the Judicial Branch," <u>id.</u> at 48, and the federal courts' "limited" power "to fashion, on their own initiative, rules of grand jury procedure," <u>id.</u> at 50, the decision to instruct the grand jurors that they were forbidden to consider certain topics is plainly wrong. Indeed, given the conflict between the Supreme Court's view of the institution, as expressed in <u>Vasquez</u>, and the view expressed in the instructions, the instructions "judicial[ly] reshap[e] ... the grand jury institution, substantially altering the traditional relationships between the prosecutor, the constituting court, and the grand jury itself." <u>Id.</u> <u>Williams</u> plainly forbids this "judicial reshaping" of the grand jury's role. <u>Id.</u> This error requires dismissal of the indictment.[11]

C.      **The Instructions Demean the Independence of the Grand Jury By Falsely Informing the Grand Jurors That Probable Cause Has Already Been Determined By a Judge After a Non-Existent Hearing.**

The instructions erroneously state that the grand jury's job is merely to ratify a probable cause determination already made by a judge. In those cases where an individual is arrested prior to the submission of his case to the grand jury -- the grand jurors are instructed that defendants "are

---

[11]In <u>Marcucci</u>, a panel of the Ninth Circuit found that instructing the Grand Jury that it "should indict" did not encroach upon its independence. <u>See</u> 299 F.3d at 1164. That decision did not rule on the arguments propounded under <u>Williams</u> that circumscribing their consideration of penalties and the wisdom of laws was an undue exercise of supervisory powers and violated Supreme Court precedent. *See id.* In addition, the issues presented in <u>Marcucci</u> were reaffirmed in a subsequent decision <u>United States v. Navarro-Vargas</u>, 367 F.3d 896, 898 (9th Cir. 2004) (also the subject of a heated dissent), however, the Ninth Circuit has now ordered rehearing *en banc* in <u>Navarro-Vargas</u>. <u>See</u> __ F.3d __, 2004 WL 1918689 (9th Cir. Aug. 25, 2004),   Thus, the issue of the propriety of these Grand Jury instructions in the only circuit where they have been addressed remains an open question as of the date of this pleading. Oral argument before the *en banc* Ninth Circuit Court of Appeals is scheduled for October 14, 2004.

taken before a magistrate judge, who then holds a preliminary hearing to determine whether there is probable cause to believe that the person has committed a crime." *Model Grand Jury Charge* at 3. Of course, there is no "preliminary hearing;" the magistrate judge's probable cause determination is undertaken *ex parte*. See Fed. R. Crim. P. 4(a) and 5(a). But a grand juror, of course, would take the instructions as true, and believe that there has already been a probable cause determination, presumably after a hearing in which both parties participated, and that the defendant necessarily lost that battle. *Model Grand Jury Charge* at 3 ("[i]f the magistrate judge finds such probable cause, the judge will direct that the accused be held for the action of the Grand Jury so that you can consider whether there should be an indictment"). Thus, not only is the grand jury asked merely to ratify a legal professional's determination, it is led to believe that the determination was made after a proceeding far more fair than the one in which the grand jurors are involved because the grand jurors proceed without any input from the defense.

In cases, such as Mr. Knight' the Grand Jury is led to believe that its judgment is to be overseen by a magistrate judge, who after holding this mythical "preliminary hearing" will really decide whether there is probable cause to believe that Mr. Knight committed the crime. Hence, misleading the Grand Jurors into believing that there is some sort of check on the exercise of their authority performed by the magistrate is error under the Supreme Court's cases.

Again, in order to fulfill its role in "standing between the accuser and the accused," the Grand Jury must be *independent* of both the prosecuting attorney and the court. See Williams, 504 U.S. at 49. These instructions obliterate that independence by setting up the grand jury as either a rubber stamp for judicial probable cause determinations or some step along the way to be checked and balanced by the magistrate judge.

**D.** **The Errors Created By the Defective Grand Jury Charge Are Structural.**

The Fifth Amendment grand jury right guarantees the "traditional functioning of the institution." Williams, 504 U.S. at 51. The misleading and inappropriate instructions alone should be sufficient to compel dismissal of the indictment because they suggest that the Grand Jury is not independent: grand jurors are essentially told that their collective judgment as to the wisdom of a particular prosecution is irrelevant; they are forbidden to consider penalty information, even if they want to; and that their purpose is simply to ratify a decision already made by a judge. This sort of attack on grand juror independence is a structural error, permitting dismissal in the absence of a showing of prejudice. See Nova Scotia, 487 U.S. at 256-57 ("presumption of prejudice" allowed when "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair"). Because the independence of the Grand Jury implicates a fundamental Fifth Amendment interest, see Stirone, 361 U.S. at 218 ("the very purpose of the requirement that a man be indicted by a grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge"), a structural error analysis must be applied. Even if Mr. Knight has to demonstrate prejudice, he need only show that the erroneous instructions "'substantially influenced the grand jury's decision to indict' or [whether] there is 'grave doubt' that the decision to indict was free from the substantial influence" of the improper instructions. Nova Scotia, 487 U.S. at 256 (brackets in original); accord United States v. Larrazolo, 869 F.2d 1354, 1358 (9th Cir. 1989). This disjunctive test, id. at 868-69 n.47, effectively requires only that Mr. Knight meet the "grave doubt" test.

20

Respectfully submitted,

KATHLEEN M. WILLIAMS
FEDERAL PUBLIC DEFENDER


By: _____

Shereen J. Charlick
Supervisory Assistant Federal Public Defender
Court Assigned No. A5500158
150 West Flagler Street
Suite 1700
Miami, Florida 33130-1556
Tel: (305) 530-7000
Fax (305) 536-4559

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent via Inter Agency Mail to: Karen Rochlin, Assistant United States Attorney, 99 N.E. 4th Street, Miami, Florida 33132 this _____ day of October, 2004.

_____
Shereen J. Charlick

EXHIBIT 'A'

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

04 - 20490 - CR - COOKE /McALILEY

CASE NO.
18 U.S.C. § 611

UNITED STATES OF AMERICA

vs.

RICARDO KNIGHT

_____/

### INDICTMENT

The Grand Jury charges that:

### COUNT 1

On or about November 7, 2000, in Miami-Dade County, in the Southern District of Florida,

the defendant,

**RICARDO KNIGHT,**

an alien, fully knowing he was not a United States citizen, did knowingly vote in an election held

in part for the purpose of electing a candidate for federal office.

In violation of Title 18, United States Code, Section 611.

A TRUE BILL

_____
FOREPERSON

_____
MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY

_____
KAREN E. ROCHLIN
ASSISTANT UNITED STATES ATTORNEY



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

vs.

RICARDO KNIGHT,

                **Defendant.**
_____/

CASE NO. _____

**CERTIFICATE OF TRIAL ATTORNEY***

# 04 - 20490 CR-COOKE

/ McALILEY

Superseding Case Information:

**Court Division:** (Select One)

  X   Miami  ____  Key West
____  FTL  ____  WPB  ____  FTP

New Defendant(s)      Yes ____  No ____
Number of New Defendants  ____
Total number of counts  ____

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No)     No
   List language and/or dialect  _____

4. This case will take  __3__  days for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)                         (Check only one)

| | | | | |
|---|---|---|---|---|
| I | 0 to 5 days | __X__ | Petty | _____ |
| II | 6 to 10 days | _____ | Minor | _____ |
| III | 11 to 20 days | _____ | Misdem. | __X__ |
| IV | 21 to 60 days | _____ | Felony | _____ |
| V | 61 days and over | _____ | | |

6. Has this case been previously filed in this District Court? (Yes or No)  __No__
If yes:
Judge: _____  Case No. _____
(Attach copy of dispositive order)
Has a complaint been filed in this matter?  (Yes or No)  __No__
If yes:
Magistrate Case No. _____
Related Miscellaneous numbers: _____
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the _____  District of _____

Is this a potential death penalty case? (Yes or No)  __No__

7. Does this case originate from a matter pending in the U.S. Attorney's Office prior to April 1, 2003?  _____ Yes  __No__ No

8. Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999?  _____ Yes  __No__ No
If yes, was it pending in the Central Region?  _____ Yes  _____ No

9. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?  _____ Yes  __No__ No

10. Does this case originate from a matter pending in the Narcotics Section (Miami) prior to May 18, 2003?  _____ Yes  __No__ No

                            KAREN E. ROCHLIN
                            ASSISTANT UNITED STATES ATTORNEY
                            Court ID No. A5500050

*Penalty Sheet(s) attached

REV. 1/14/04



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

Defendant's Name:　　**RICARDO KNIGHT**

Case No: _____

Count #: 1 **04 - 20490** CR - C̶O̶O̶K̶E̶ / McALILEY

　Election Fraud _____

　Title 18, United States Code, Section 611 _____

**\* Max.Penalty:**　　　　1 years' imprisonment _____

Count #: _____

_____

_____

**\*Max. Penalty:** _____

Count #: _____

_____

_____

**\*Max. Penalty:** _____

Count #: _____

_____

_____

**\*Max. Penalty:** _____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

EXHIBIT 'B'

MODEL GRAND JURY CHARGE
(Adopted by the Judicial Conference, March 1986)

LADIES AND GENTLEMEN:

Now that you have been empaneled and sworn as a Grand Jury, it is the Court's

responsibility to instruct you as to the law which should govern your actions and your

deliberations as Grand Jurors.

The framers of our Federal Constitution deemed the Grand Jury so important for the

administration of justice, they included it in the Bill of Rights. As I said before, the Fifth

Amendment to the United States Constitution provides in part that no person shall be

held to answer for a capital or otherwise infamous crime without action by a Grand Jury. An

infamous crime is a serious crime which may be punished by imprisonment for more than one

year. The purpose of the Grand Jury is to determine whether there is sufficient evidence to justify

a formal accusation against a person. If law enforcement officials were not required to submit to

an impartial grand jury proof of guilt as to a proposed charge against a person suspected of

having committed a crime, they would be free to arrest a suspect and bring him to trial no matter

how little evidence existed to support the charge. As members of the Grand Jury, you, in a very

real sense, stand between the government and the accused. It is your duty to see to it that

indictments are returned only against those who you find probable cause to believe are guilty and

to see to it that the innocent are not compelled to go to trial. If a member of the Grand Jury is

related by blood or marriage or knows or socializes to such an extent as to find himself or herself

in a biased state of mind as to a person under investigation, or is biased for any reason, he or she

should not participate in that investigation or in the return of the indictment. This does not mean

that if you have an opinion you should not participate in the investigation. However, it does mean

that if you have a fixed opinion before you hear any evidence, either on a basis of friendship or hatred or some other similar motivation, you should not participate in that investigation and in voting on the indictment.

## LIMITATION ON THE POWERS OF THE GRAND JURY

Although as Grand Jurors you have extensive powers, they are limited in several important respects.

You can only investigate conduct which violates federal criminal laws. Criminal activity which violates state law is outside your inquiry. Sometimes, though, the same conduct violates both federal and state law, and this you may properly consider.

There is also a geographic limitation on the scope of your inquiries in the exercise of your power. You may inquire only to federal offenses committed in this district which includes the following counties:

You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal. That is to be determined by Congress and not by you.

Furthermore, when deciding whether or not to indict, you should not be concerned about punishment in the event of conviction.  Judges alone determine punishment.

2

## THE GRAND JURY'S TASKS AND PROCEDURES

The cases which you will hear will come before you in various ways. Frequently, suspects are arrested during or shortly after the commission of an alleged crime, and they are taken before a Magistrate, who then holds a preliminary hearing to determine whether there is probable cause to believe that the person has committed a crime. If the Magistrate finds such probable cause, he will direct that the accused be held for the action of the Grand Jury so that you can consider whether there should be an indictment.

Other cases will be brought before you by the U.S. Attorney or an Assistant U.S. Attorney before an arrest but after an investigation has been conducted by a governmental agency such as the Federal Bureau of Investigation, the Treasury Department, the Drug Enforcement Administration, Postal Authorities, or other federal law enforcement officials.

Those are the two principal manners in which matters will be presented to you for investigation. However, if during the course of your hearings, a different crime other than the one you are investigating surfaces, you have the right to pursue this new crime. Although you can subpoena new witnesses and documents, you have no power to employ investigators or to expend federal funds for investigative purposes. If the United States Attorney refuses to assist you or if you believe he is not acting impartially, you may take it up with me or any Judge of this Court. You may use this power even over the active opposition of the government's attorneys, if you believe it is necessary to do so in the interest of justice.

3

Since the United States Attorney has the duty of prosecuting persons charged with the commission of federal crimes, he or one of his assistants will present the matters which the government desires to have you consider. He will point out to you the laws which the government believes have been violated, and he will subpoena for testimony before you such witnesses as he may consider important and necessary and also any other witnesses that you may request or direct him to call before you.

## EVIDENCE

Sixteen of the twenty-three members of the Grand Jury constitute a quorum and must be present for the transaction of any business. If fewer than this number are present, even for a moment, the proceedings of the Grand Jury must stop.

The evidence you will consider will normally consist of oral testimony of witnesses and written documents. Each witness will appear before you separately. When the witness first appears before you, the Grand Jury foreperson will administer the witness an oath, or when necessary, an affirmation, to testify truthfully. After this has been accomplished, the witness may be questioned. Ordinarily, the United States Attorney or one of his assistants questions the witness first. Next, the foreperson may question the witness, and then any other members of the Grand Jury may ask questions. In the event a witness does not speak or understand the English language, an interpreter may be brought into the Grand Jury room to assist in the questioning.

Witnesses should be treated courteously and questions put to them in an orderly fashion.

4

If you have any doubt whether it is proper to ask a particular question, ask the United States Attorney or one of his assistants for advice.

You alone decide how many witnesses you want to hear. You can subpoena witnesses from anywhere in the country, directing the United States Attorney to issue necessary subpoenaes. However, persons should not ordinarily be subjected to disruption of their daily lives, harassed, annoyed, or inconvenienced, nor should public funds be expended to bring in witnesses unless you believe they can provide meaningful evidence which will assist you in your investigation.

Every witness has certain rights when he appears before a Grand Jury. He has the right to refuse to answer any question if the answer would tend to incriminate him and the right to know that anything he says may be used against him. If the witness exerciseshis right against compulsory self-incrimination, the Grand Jury should hold no prejudice against him and this can play no part in the return of any indictment against him.

Although witnesses are not permitted to have a lawyer present with them in the Grand Jury room, the law permits witnesses to confer with their lawyer outside of the Grand Jury room. Since an appearance before a Grand Jury may present complex legal problems requiring the assistance of a lawyer, you also can draw no adverse inference if a witness chooses to exercise this right and leaves the Grand Jury room to confer with his attorney.

5

Ordinarily, neither the accused nor any witnesses in his behalf will testify before the Grand Jury. Upon his request, preferably in writing, you may afford the accused an opportunity to appear before you. Because the appearance of an accused before you may raise complicated legal problems, you should seek the United States Attorney's advice and, if necessary, the Court's ruling before his appearance is permitted. Before the accused testifies, he must be advised of his rights and required to sign a formal waiver. You should be completely satisfied that he understands what he is doing. You are not required to summon witnesses which the accused person may wish to have examined unless probable cause for an indictment may be explained away by their testimony.

The determination of whether a witness is telling the truth is something that you must decide. Neither the Court nor the prosecutors or any officers of the Court may make this determination for you.

Hearsay testimony, that is, testimony as to facts not known by the witness of his own personal knowledge and which has been told or related to him by persons other than the accused, may in itself, if deemed by you to be persuasive, provide a basis for returning an indictment against an accused.

## DELIBERATION AND VOTE

After you have heard all the evidence you wish to hear in a particular matter, you will then proceed to deliberate as to whether the accused person should be indicted. No one other than

your own members is to be present while you are deliberating or voting.

To return an indictment charging an individual with an offense, it is not necessary that you find the accused is guilty beyond a reasonable doubt. You are not a trial jury and your task is not to decide the guilt or innocence of the person charged. Your task is to determine whether the government's evidence as presented to you is sufficient to cause you to conclude that there is probable cause to believe that the accused is guilty of the offense charged against him. To put it another way, you should vote to indict where the evidence presented to you is sufficiently strong to warrant a reasonable person's believing that the accused is probably guilty of the offense with which he is charged.

Each juror has the right to express his view of the matter under consideration. Only after all Grand Jurors have been given full opportunity to be heard will a vote be taken. You may decide after deliberation among yourselves that further evidence should be considered before a vote is taken. In such case you may direct the United States Attorney to subpoena the additional documents or witnesses you desire to consider.

When you have decided to vote, the foreperson shall designate a juror as secretary who will keep a record of the vote, which shall be filed with the Clerk of Court. The record does not include the names of the jurors but only the number of those voting for the indictment.

If twelve or more members of the Grand Jury, after deliberation, believe that an indictment is warranted, then you will request the United States Attorney to prepare the formal

7

written indictment if one has not already been prepared and presented to you. The indictment will set forth the date and place of the alleged offense, will assert the circumstances making the alleged conduct criminal, and will identify the criminal statute violated. The foreperson will endorse or sign the indictment as a true bill, and place his signature in the space followed by the word "foreperson." It is the duty of the foreperson to endorse or sign every indictment, whether he voted for or against. If less than twelve members of the Grand Jury vote in favor of an indictment which has been submitted to you for your consideration, the foreperson will endorse the indictment "Not a True Bill" and return it to the Court and the Court will impound it.

Indictments which have been endorsed as a true bill will be presented to a Judge [or a Magistrate] in open court by your foreperson at the conclusion of each deliberative session of the Grand Jury. In the absence of the foreperson, a deputy foreperson may act in his place and perform all his functions and duties.

## INDEPENDENCE OF THE GRAND JURY

It is extremely important for you to realize that under the United States Constitution, the Grand Jury is independent of the United States Attorney and is not an arm or agent of the Federal Bureau of Investigation, the Drug Enforcement Administration, the Internal Revenue Service, or any governmental agency charged with prosecuting a crime. There has been some criticism of the institution of the Grand Jury for supposedly acting as a mere rubber stamp approving prosecutions that are brought before it by government representatives. However, as a practical matter you must work closely with the government attorneys. The United States Attorney and his

8

assistants will provide you with important service in helping you to find your way when confronted with complex legal matters. It is entirely proper that you should receive this assistance. If past experience is any indication of what to expect in the future, then you can expect candor, honesty and good faith in matters presented by the government attorneys. However, ultimately, you must depend on your own independent judgment, never becoming an arm of the United States Attorney's office. The government attorneys are prosecutors. You are not. If the facts suggest that you should not indict, then you should not do so, even in the face of the opposition or statements of the United States Attorney.

Just as you must maintain your independence in your dealings with the government attorneys, so should your dealings with the Court be on a formal basis. If you should have a question for the Court or desire to make a presentment or return an indictment to the Court, you will assemble in the courtroom for these purposes. Moreover, each juror is directed to report immediately to the Court any attempt by any person who under any pretense whatsoever addresses or contacts him or her for the purpose of or with the intent to gain any information of any kind concerning the proceedings of the Grand Jury, or to influence a juror in any manner or for any purpose.

### THE OBLIGATION OF SECRECY

Your proceedings are secret and must remain secret permanently unless and until the Court decrees otherwise. You cannot relate to your family, to the news or television reporters, or to anyone that which transpired in the Grand Jury room. There are several important reasons for

9

this requirement. A premature disclosure of Grand Jury action may frustrate the ends of justice by giving an opportunity to the accused to escape and become a fugitive or to destroy evidence. Also, if the testimony of a witness is disclosed, he may be subject to intimidation, retaliation, bodily injury, or other tampering before he testifies at trial. Thirdly, the requirement of secrecy protects an innocent person who may have come under investigation but has been cleared by the actions of the Grand Jury. In the eyes of some, investigation by a Grand Jury alone carries with it a suggestion of guilt. Thus great injury can be done to a person's good name even though he is not indicted.

To insure the secrecy of Grand Jury proceedings, the law provides that only authorized persons may be in the Grand Jury room while evidence is being presented. Only the members of the Grand Jury, the United States Attorney, or his assistant, the witness under examination, the court reporter, and an interpreter, if required, may be present. If an indictment should ultimately be voted, the presence of unauthorized persons in the Grand Jury room could invalidate it. Particularly remember that no person other than the Grand Jury members themselves may be present in the Grand Jury room while the jurors are deliberating and voting. Although you may disclose matters which occur before the Grand Jury to attorneys for the government for use by such attorneys in the performance of their duties, you may not disclose the contents of your deliberations and the vote of any juror even to government attorneys.

CONCLUSION

The importance of the service you will perform is demonstrated by the very

10

comprehensive and important oath which you took a short while ago. It is an oath rooted in history and thousands of your forebears have taken similar oaths. Therefore, as good citizens, you should be proud to have been selected to assist in the administration of the American system of justice.

The United States Attorney/his assistants will now accompany you and will assist in getting organized, after which you may proceed with the business to come before you.

The United States Marshal and his deputies will attend you and be subject to your appropriate orders.

You may now retire.

[N.B. It is suggested that grand jurors be provided either with a written copy of the charge or with the Handbook for Grand Jurors.]

11