UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 04-20490 Cr COOKE/McAliley

NIGHT BOX
FILED

JAN 2 8 2005

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

UNITED STATES OF AMERICA,

Plaintiff,

vs.

RICARDO KNIGHT,

Defendant.
_____/

## DEFENDANT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT & RECOMMENDATION DENYING HIS MOTIONS TO DISMISS INDICTMENT

Defendant, RICARDO KNIGHT, by and through his attorney, Shereen J. Charlick, Assistant Federal Public Defender, files the following objections to the Magistrate Judge's Report and Recommendation denying his motion seeking dismissal of the one-count indictment for the reasons set forth below.

## STATEMENT OF FACTS IN SUPPORT OF MOTIONS

According to the discovery provided by the prosecution, Mr. Knight is a lawful permanent resident, having emigrated to the United States before he reached the age of 16. He is charged with violating 18 U.S.C. § 611, a misdemeanor statute criminalizing voting in a federal election while being an alien. While the indictment itself alleges that Mr. Knight, "an alien, fully knowing he was not a United States citizen, did knowingly vote in an election held in part for the purpose of electing a candidate for federal office," the statute does not require even knowledge. It provides:

**Voting by aliens**

It shall be unlawful for any alien to vote in any election held solely or in part for the purpose of electing a candidate for the office of President, Vice President . . . .

18 U.S.C. § 611(a). The statute then lists a number of exceptions by which aliens could be free from prosecution. *See* 18 U.S.C. § 611(a)(1)-(3); § 611(c)(1)-(3).

First, Mr. Knight argued in his motion to dismiss that the lack of all mens rea in the statute

was actually deliberate and that intentional omission of mens rea rendered the statute unconstitutional; alternatively, he sought a ruling that if a mens rea was to be "imported" into the statute, it had to be either a "specific intent" mens rea or at least a more stringent knowledge mens rea, according to Supreme Court and Circuit authorities, which require a mens rea sufficient to separate innocent from wrongful conduct.

He also moved to dismiss the indictment because the Grand Jury was misinstructed.

In the Report and Recommendation, the Magistrate Judge relied entirely upon an earlier decision issued by Judge Lenard to deny the first motion regarding mens rea and found that the crime was simply a "general intent" crime. Regarding the Grand Jury issue, she ordered that the government provide the defense with the Grand Jury instructions which were given in this case but ultimately ruled that the Grand Jury instructions, as a whole, were acceptable.

## I. THE COURT CANNOT "READ MENS REA" INTO THIS STATUTE BECAUSE IN ENACTING TITLE 18 U.S.C. § 611, CONGRESS DID CONSIDER MENS REA AND DELIBERATELY OMITTED IT AS AN OFFENSE ELEMENT.

In his motion to dismiss, Mr. Knight contended that this statute violates due process because it is both overbroad and impermissibly vague – it criminalizes two wholly innocent acts, being an alien and voting, and does so deliberately, excluding  any mens rea as an offense element. *See Coalutti v. Franklin*, 439 U.S. 379 (1979) (constitutional challenges to a statute's lack of mens rea are closely related to vagueness challenges); *United States .v Cordoba-Hincapie*, 835 F. Supp. 2d 485, 513 (E.D.N.Y. 1993) ("the constitutional aversion is to capturing the unwitting person who did not seek to violate the law"). Under the Supreme Court's jurisprudence on mens rea, statutes which lack all mens rea are rare and disfavored, however, only where it is consistent with congressional intent, do courts read some form of mens rea into these statutes so that they comport with due process. *See Dennis v. United States*, 341 U.S. 495, 500 (1951); *Morissette v. United States*, 342 U.S. 250-251 (1952).

Here, the Magistrate Judge adopted the reasoning of Judge Lenard who noted that the statute

lacks mens rea so she imported a "knowledge" element into the statute. However, this statute cannot be saved by implying mens rea where Congress considered mens rea and deliberately excluded it from the offense elements. Under these circumstances, to imply any mens rea would contravene congressional intent, *see Morissette*, 342 U.S. at 247, and implying mens rea in this manner also contravenes separation of powers principles. *See Buckley v. Valeo*, 424 U.S. 1 (1976). The Judge Lenard Order adopted by the Magistrate Judge really did not address this argument.

Mr. Knight contended in the alternative, that if any mens rea could ever be imported into the statute, applying principles from Supreme Court and Circuit court authorities requires the Court to import a specific intent mens rea or knowledge that voting while an alien was somehow unauthorized or contrary to law. Specific intent mens rea is necessary in this case in order to separate wrongful conduct from otherwise innocent conduct. *See Carter v. United States*, 530 U.S. 255, 269 (2000) (discussing situations which require reading specific intent into statutes). Reading such intent into the statute "'narrows the scope of the enactment by exempting innocent or inadvertent conduct from its proscription.'" *See National Mobilization Comm. v. Foran*, 411 F.2d 934, 937 (7th Cir. 1969).

Judge Lenard's order in *United States v. Sweeting*, No. 04-20489 ("Sweeting Order"), relied on entirely by Judge McAliley, concluded that 18 U.S.C. § 611 does not contain, on its face, a mens rea requirement, and concluded that it was not a "public welfare" offense, Sweeting Order at 4-5 & n.2. However, Judge Lenard found that because the legislative history did not reveal any indication to omit mens rea, she would read the general intent mens rea "knowingly" into the statute. *Id.* at 4-7.

The problem with this analysis is that the statute itself, the starting point for all statutory construction, contains an explicit reference to the only mental state which Congress legislated – however, it was codified as an exception to the statute, arguably requiring the defense to bear the burden of proving entitlement to this exception and it codified only a "reasonable" person mental state. The Supreme Court cases which permit mens rea to be "imported" into a statute where it

would otherwise be lacking only allow courts to do so when its omission from the statute was not deliberate.

Here, as it is written today, it is apparent that Congress considered mens rea in connection with 18 U.S.C. § 611 but deliberately omitted it <u>as part of the offense elements.</u> Rather, after listing the offense elements, that one is an alien and votes in a specified election, the statute then lists a number of exceptions by which aliens could be free from prosecution. *See* 18 U.S.C. § 611(a)(1)-(3); § 611(c)(1)-(3). One of these includes, as part of a three-part exception, someone who <u>reasonably believes</u> he or she is a citizen, *see* 18 U.S.C. § 611(c)(3) (emphasis added), but only if that person also resided permanently in the United States before age 16 and only if the person's parents are also citizens of the United States. 18 U.S.C. § 611(c)(1)-(2). There is no specification regarding who bears the burden of demonstrating the exception(s). Thus, individuals who mistakenly believe that they have properly naturalized but who did not, and who do not fulfill the other exceptions (or all parts thereof) set forth in section 611(c) have no defense. Individuals brought here from abroad as children of undocumented or adoptive parents, who never realize they are not citizens, who vote with innocent intent, have no defense. Similarly, individuals who, when an objective standard is applied, did not "reasonably" believe they were citizens of the United States or individuals who have never known that as aliens, they were not permitted to vote, an otherwise "innocent" activity,[1] have no defense under this statute. That one part of the possibly tripartite exception contains an objective[2] form of mens rea means only that Congress thought about mens rea's place in this statute and rejected it.

---

[1] Voting is more than an otherwise "innocent activity." It is considered one's civic duty, such as paying taxes – something which aliens do. Voting is a highly encouraged activity, replete with television ads encouraging people to register to vote, television programs, such as "Rock the Vote," people on street corners and at certain government institutions, such as the Department of Motor Vehicles and the like, registering individuals to vote.

[2] Ordinarily, mens rea is phrased as knowledge or willfulness and it is not limited to what would be known as an objectively reasonable matter.

"The definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute." *Liparota v. United States*, 471 U.S. 419 (1985). "[D]etermining the mental state required for commission of a federal crime requires 'construction of the statute and . . . inference of the intent of Congress.'" *Staples v. United States*, 511 U.S. 600, 605 (1994) (citations omitted, elipses in original). In this case, Congress made it easy – they deliberately omitted all mens rea in the offense elements, relegating only the mens rea of the objectively reasonable person to one part of a possibly three-part exception.

Here, where Congress explicitly discusses mens rea in the statute's text but not as an offense element and only as an exception and only for reasonably held beliefs, it demonstrates a clear intent to exclude other forms of mens rea. "Congress says in a statute what it means and means what it says there." *Hartford Underwriters v. Union Planters Bank*, 530 U.S. 1, 6 (2000). In addition, the negative implication principle of interpretation, expressio unius est exclusio alterius (the expression of one thing is the exclusion of the others), supports the argument that the inclusion of the reasonable person mens rea as an exception only means that Congress intended to exclude mens rea as an offense element. *See United States v. Polar*, 369 F.3d 1248, 1252 (11th Cir. 2004); *see also See Boudette v. Barnette*, 923 F.2d 754, 756-57 (9th Cir.1991) (noting that the canon of "expressio unius est exclusio alterius ... as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions" (citation omitted)).

In *Polar*, this Circuit rejected the argument that a crime which contained only the mens rea language "knowingly" had any greater scienter requirement, citing the principle of "[i]ndeed, under the principle of "expressio unius est exclusio alterius, inclusion of the word "knowingly" tilts against any possibility that Congress intended any additional scienter requirement." 369 F.3d at 1252.

5

In a footnote, the Judge Lenard Order discounts the mens rea language of the exception by noting that it was enacted as an amendment to section 611 four years after the statute was adopted. *Sweeting* Order at 8 n.7. She gives no reason as to why a subsequent amendment which references a form of mens rea but legislates it only as an exception is irrelevant. Subsequent amendments to statutes which make substantive changes must be considered when analyzing statutes. *Bowen v. Yuckert*, 482 U.S. 137, 149, 151 (1987) ("A statute should be construed to be consistent with subsequent statutory amendments"). Indeed, "a statute is to be considered in all its parts when construing any one of them." *Lexecon, Inc. v. Milbert, Weiss*, 523 U.S. 26, 36 (1998).

In *Morissette,* the Court recognized "[o]f course, the purpose of every statute would be 'obstructed' by requiring a finding of intent, if we assume that it had a purpose to convict without it." 342 U.S. at 247. This Court cannot rewrite section 611 to comply with the Constitution where doing so violates plain statutory language and underlying congressional intent. "[C]ourt[s] do not enjoy] the prerogative to ignore the legislative will in order to avoid constitutional adjudication; 'although the [Supreme] Court will often strain to construe legislation so as to save it against constitutional attack, it must not and will not carry this to the point of perverting the purpose of a statute,' . . . or judicially rewriting it." *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 841 (1986) (quoting *Aptheker v. Secretary of State,* 378 U.S. 500, 515 (1964) and *Scales v. United States,* 367 U.S. 203, 211 (1961)) (internal quotations omitted). *See also X-Citement Video, Inc.,* 513 U.S. at 86 (Scalia, J., dissenting) ("Not every construction, but only 'every reasonable construction must be resorted to, in order to save a statute from unconstitutionality.'") (quotations omitted); *see also Brogan v. United States,* 522 U.S. 398 (1998) (Court demonstrated aversion to such "judicial legislation"by rejecting the "exculpatory no" doctrine: "it is not, and cannot be, our

practice to restrict the unqualified language of a statute to the particular evil that Congress was trying to remedy -- even assuming that it is possible to identify that evil from something other than the text of the statute itself."). Finally, any efforts to rewrite section 611 to somehow insert mens rea (as the government has tried to do in the indictment), where doing so contravenes congressional intent, violates the Separation of Powers doctrine. *See Buckley v. Valeo,* 424 U.S. 1, 122 (1976) ("The Framers regarded the checks and balances that they had built into the tripartite Federal Government as a self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other"). In sum, title 18 U.S.C. § 611 which criminalizes otherwise innocent activity without any mens rea whatsoever is overbroad and violates due process principles.

The *Sweeting* Order did not address this argument, that Congress actually did consider mens rea and rejected it, except as part of the exception. Instead of discussing this exception which is set forth in the text of the statute itself, she went to the legislative history. However, her conclusion that the legislative history was silent on the subject of mens rea, thus, the Court could read in mens rea is incorrect as a matter of principles of statutory construction. One does not begin with the legislative history, one looks first to the statute. *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 253-254 (1992), Only if the statute is entirely silent does one consider the legislative history. Where a form of mens rea is legislated as an exception to the statute, the statute itself lacks mens rea as an offense element but it is not silent. The *Sweeting* Order's conclusion, that the legislative history does not reference mens rea means nothing because the statute itself codifies a "reasonable man" form of mens rea but only as an exception and not as an offense element where it is required. The *Sweeting* Order's reading of section 611 is actually a judicial rewriting of the statute in contravention of congressional intent and separation of powers' principles.

7

## II. IF ANY MENS REA CAN BE READ INTO SECTION 611, A SPECIFIC INTENT OR A MORE STRINGENT KNOWLEDGE REQUIREMENT IS NECESSARY.

If the Court believes it can save the statute by reading in mens rea, it must read in "specific intent" in order to separate innocent or inadvertent conduct from wrongful conduct. At least, the Court must imply a mens rea similar to that implied by the Supreme Court in *Liporota* – knowledge that one's conduct is somehow unauthorized. *See* 471 U.S. at 434. In that case, the indictment should still be dismissed because Mr. Knight's grand jury did not find specific intent or at least a heightened knowledge mens rea as an element of the offense.

"'It is alike the general rule of law, and the dictate of natural justice, that to constitute guilt there must be not only a wrongful act, but a criminal intention. Under our system, (unless in exceptional cases), both must be found by the jury to justify a conviction for crime." *Morissette*, 342 U.S. at 274. In counseling against construing statutes to lack all mens rea, the Supreme Court cites with approval the following passage: "[t]o inflict substantial punishment upon one who is morally entirely innocent, who caused injury through reasonable mistake or pure accident, would so outrage the feelings of the community as to nullify its own enforcement."' *Id.* at 262 n.20 (quoting Francis Bowles Sayre, *Public Welfare Offenses*, 33 Col. L. Rev. 55, 56 (1933)).

In *Liparota,* 471 U.S. 419, the Supreme Court held that criminal statutes which lack all mens rea are disfavored in criminal law, and to interpret a statute in a way which dispenses with mens rea would be to criminalize a broad range of innocent conduct. *Id.* at 426. *Liparota* involved a statute criminalizing knowingly using, acquiring, possessing or transferring food stamps in any manner not authorized by the particular statute. There, the government argued that "no mens rea or 'evil-meaning mind' . . . [was] necessary for conviction," meaning as long as the defendant knew that he possessed food stamps, he did not have to know that his possession was "unauthorized" to be guilty

8

under the statute. The defendant argued that this interpretation "dispensed with the only morally blameworthy element in the definition of the crime." *Id.* at 423. Citing *Morissette*'s discussion of how "an injury can amount to a crime only when inflicted by intention,"      *id.* at 425 (citing *Morissette*, 342 U.S. at 230), the Court held that not only the possession but the unauthorized nature of it, had to be knowing. *Liparota*, 471 U.S. at 425 ("Absent indication of contrary purpose in the language or legislative history of the statute, we believe that [the statute] requires a showing that the defendant knew his conduct to be unauthorized by statute or regulations").[3]

Again in *United States v. X-Citement Video*, 513 U.S. 64, 71-72 (1994), the Supreme Court rejected the "most  grammatical reading of the statute criminalizing "knowingly transporting, shipping, receiving . . . a visual depiction . . . which involves the use of a minor engaging in sexual explicit conduct." This reading criminalized only the knowing transportation where the defendant was unaware of the age of actor engaging in the sexual explicit conduct. *Id.* at 71-72. Citing *Morissette*, *Liparota* and *Staples v. United States*, 511 U.S. 600 (1994), the Court read a knowledge requirement regarding the age of the actor engaging in the sexually explicit conduct into the statute. *Id.* at 72 ("*Morissette*, reinforced by *Staples*, instructs that the presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent

---

[3] Title 18 U.S.C. § 611 criminalizes voting by an alien,  who is by virtue of noncitizenship, unauthorized to vote. One may argue that aliens ought to know that they cannot vote, thus, not mens rea is necessary. *Liparota* criminalizes unlawful possession of food stamps by individuals who were not authorized to possess them.  There, one could argue that everyone ought to know that only certain people qualify for food stamps, thus, no mens rea regarding obtaining the food stamps in an unauthorized manner, should be required.  Notwithstanding what everyone ought to know, the Supreme Court held that because possession of food stamps was an innocent, as opposed to criminal act, to obtain a conviction under the statute, the government must prove that the defendant knew not only that he possessed the food stamps but that such possession was unauthorized by statute or regulation. *Liparota*, 471 U.S. at 425.

conduct."). That level of mens rea was required so that "[c]riminal intent serves to separate those who understand the wrongful nature of their acts from those who do not . . . ." *X-Citement Video*, 513 U.S. at 72 n.3.

Judge Lenard's Order failed entirely to address persuasive authority from the Ninth Circuit which addressed a similar issue with 18 U.S.C. § 1425, which criminalizes knowingly acquiring naturalization contrary to law. The court held that the term "knowingly" meant not only that the act of acquiring naturalization had to be knowing but that knowingly had to apply to the terms "contrary to law" as well. *United States v. Pasillas-Gaytan*, 192 F.3d 864, 867 (9th Cir. 1999).

In *Pasillas-Gaytan*, the court rejected the government's argument that all a defendant had to do was to "knowingly" procure naturalization because "applying for naturalization is almost always a voluntary, intentional act. We believe that the statute requires a culpable state of mind as well. The government's construction of the statute would criminalize completely innocent conduct and would essentially impose strict liability upon defendants." *Id.* at 868. Because "[t]he general rule is that criminal statutes do not impose strict liability," and because [t]he existence of mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence," the statute had to be construed "with the general presumption that the defendant must know the facts that make his conduct illegal." *Id.*[4] Here, voting is just as surely "always a voluntary, intentional act" just as is applying for naturalization, thus, only applying "knowingly" mens rea to this act is meaningless, thus the defendant here should have to know that his act of voting was somehow unauthorized or contrary to law to give any meaning to the mens rea requirement.

The *Sweeting* Order found that implying a knowledge requirement was sufficient to save this statute, however, the implied mens rea must be sufficient to separate innocent from wrongful

---

[4]  The court also rejected the government's "public welfare" offense here because those offenses are "a narrow class, limited to "statutes that regulate potentially harmful or injurious items or some dangerous or deleterious substance." *Id.* at 869 (footnotes omitted).

10

conduct. *See X-Citement Video*, 513 U.S. at 72; *see also id*. at 81 ("The presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct *even when the plain text of the statute says otherwise* ") (emphasis in original). Indeed, it is the rule rather than the exception that courts read mens rea into the statute even where it is otherwise absent. *See, e.g., Morissette*, 342 U.S. at 250; *Liparota*, 471 U.S. at 425; *Staples*, 511 U.S. 600; *X-Citement Video*, 513 U.S. at 71-72.[5]

At a minimum, because the statute criminalizes otherwise wholly innocent acts, *i.e.,* being an alien and voting, which only in combination have been made criminal, if this Court were to read a mens rea into the statute to save it, it would have to read a specific, or at least a more stringent knowledge requirement,[6] rather than general intent mens rea into this statute. *See Carter*, 530 U.S. at 269 (Court noted that "some situations may call for implying a specific intent requirement into statutory text").

In *Carter*, the Court indicated that such a circumstance was called for when the statute would otherwise "fail to protect the innocent actor," *i.e.,* the person who committed the actus reus but without intending the harm the statute sought to prevent. *See id*. The *Sweeting* Order found that because the *Carter* Court held that general intent was sufficient mens rea for bank robbery, it was sufficient here too. Not so. In *Carter*, the Supreme Court was considering what mental state was sufficient in combination with the actus reus: the forceful taking of money belonging to a bank .

---

[5] Of course, unlike 18 U.S.C. § 611, usually the word "knowingly" appeared somewhere in the statute. *See, e.g., Morissette*, 342 U.S. at 250; *X-Citement Video*, 513 U.S. 71-72; *Liparota*, 471 U.S. at 425.

[6] *Liparota* notes that there are more types of scienter than just knowledge and willfulness – a knowledge element that requires some knowledge that the actus reus was unauthorized or contrary to law should be applied here just as it was in *Liporata* and in *Pasillas-Gaytan*.

*Carter*, 530 U.S. at 259, 269.  Clearly, the forceful taking of money which does not belong to you does not constitute "otherwise innocent conduct" in the same way that voting or that being an alien does.

The *Sweeting* Order also discussed *Staples*, citing it as supposed support for general intent as sufficient in this case.  However, in *Staples*, the question presented to the Supreme Court was "[w]hether or not § 5861(d) requires proof that a defendant knew of the characteristics of his weapon that made it a "firearm" under the Act . . . . " 530 U.S. at 604.  There, the Court cited to the principles set forth in *Morissette,* 342 U.S. at 250, noting that "[t]he contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion.  It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil." *Staples*, 530 U.S. at 604.  In that case, the question was not whether knowledge or willfulness was the required mens rea, but, rather, to what elements of the remainder of the statute does the knowledge requirement apply?  The general principles set forth in *Staples*, that one have knowledge of what makes the actus reus a crime supports Mr. Knight's position in this case.

Finally, Judge Lenard's order concludes that general intent is sufficient to ensure that section 611 "is not applied to a person who does not know she is a non-citizen . . . ." *Sweeting* Order at 7. This is not true – in fact, people who do not know they are non-citizens can be convicted under this statute or else the three-part exception is entirely read out of the statute.  The only way to ensure that only criminal intent is punished is to read into a statute an intent to do something unauthorized.  The Supreme Court has indicated that specific and general intent are not the only forms of mens rea. *See Liparota*, 471 U.S. at 423 n.5 ("We have also recognized that the mental element  in criminal law

12

encompasses more than the two possibilities of 'specific' and 'general' intent") (citations omitted) and that different elements of the same statute might require different mental states. *See Staples*, 530 U.S. at 605. At the very least, this Court should read the same type of mens rea into this statute, 18 U.S.C. § 611, that the Supreme Court read into the food stamp statute in *Liparota* – it labeled this knowledge, which is ordinarily read as "general intent" however, it required that the "petitioner knew that his conduct was unauthorized or illegal." 471 U.S. at 434;[7] *see also Pasillas-Gaytan*, 199 F.3d at 868 ("[T]he defendant must know the facts that make his conduct illegal"). That level of mens rea is required here so that "[c]riminal intent serves to separate those who understand the wrongful nature of their acts from those who do not . . . ." *See X-Citement Video*, 513 U.S. at 72 n.3

People who do not know that as an alien, they cannot vote,[8] are guilty under this statute. Voting is not only an intrinsically "innocent" act, but something which our society believes is an obligation, something one should do as a civic duty. There is no Supreme Court case which permits someone to be convicted of a crime composed of two otherwise innocent acts. Indeed, the language in *Morissette* and its progeny indicates that such a statute would not be upheld under the Court's precedents. As drafted by Congress and as interpreted by the Magistrate Judge's Report and Recommendation, this statute fails to comport with the standards set forth in *Morissette*, *Liparota*, *Staples* and *X-Citement Video*.

---

[7] The Court did not require proof that the defendant knew the precise law or regulation but the government did have to demonstrate that he knew his actions were unlawful to obtain a conviction. *Liparota*, 471 U.S. at 434.

[8] After all, many aliens pay taxes, have driver's licenses, social security numbers, serve in the military, obtain business licenses, and have all the other trappings associated with the benefits and burdens of an American citizen.

III.          **THE  GRAND  JURY  INSTRUCTIONS  UNCONSTITUTIONALLY AND
              IMPROPERLY CIRCUMSCRIBE THE GRAND JURY'S AUTHORITY**

Mr. Knight moved to dismiss his indictment because he believed that the Grand Jury charge was improper in certain respects.  When his motion was filed, he did not have the actual Grand Jury charge given in this case which were subsequently provided by the government as ordered in the Magistrate Judge's Report and Recommendation, thus these objections can be tailored to fit the actual charge.  After review of the actual Grand Jury charge, Mr. Knight still believes the indictment should be dismissed because the Grand Jury was misinstructed on numerous occasions.  The most egregious violation was one he did not learn of until reviewing the actual charge: his Grand Jury was instructed that "it would be a <u>disservice if you did not indict where the evidence justifies an indictment</u> . . . ." *Grand Jury Charge* at 68 (attached as Exhibit A) (emphasis supplied).  A second error which he only learned of after production of the actual charge is the instruction that: "Hearsay testimony, that is testimony as to facts not known by a witness through personal knowledge, but told to the witness by others, may be considered by you and may provide a sufficient basis for returning an indictment against an accused party." *Grand Jury Charge* at 63.  Such a charge, without informing the grand jury that it can also reject testimony not based upon personal knowledge, and that such testimony can provide an <u>insufficient</u> basis for returning an indictment as well, misleads the Grand Jury and improperly lends an imprimatur to this type of evidence that the law does not permit.

The remaining errors he noted were addressed by the Magistrate Judge: first, that the Grand Jury's function is improperly circumscribed by the repeated instructions that its only purpose is to decide if there is probable cause to believe someone committed a crimes. *See, e.g., Grand Jury*

14

*Charge* at 57-58 (instruction that "purpose is to determine whether there is sufficient evidence to justify a formal accusation against a person. That is, to determine if there is probable cause to believe the person committed a crime. ); *id.* ("It is your duty to see it that indictments are returned only against those who you find probable cause to believe are guilty of a criminal offense under Federal law"); *id.* at 65;("Your task is to determine whether the Government's evidence is sufficient to conclude that there is probable cause to believe that the accused is guilty of the offense charged"); *id.* at 64 (instructing grand jurors that "you should vote on the question of whether the evidence persuades you that a crime has probably been committed by the person or person accused . . . .") ; *id.* at 65 ("Your task is not to decide the guilt or innocence of the person charged"). The error in these instructions is compounded by the instruction noted above, that the Grand Jurors are told that it would be a "disservice" if they failed to indict if there was such "probable cause."

> Finally, the Grand Jurors are also improperly instructed that suspects are frequently taken before an officer known as a magistrate judge before you become involved in the case. The United States Magistrate Judge holds a preliminary hearing to determine whether there is probable cause to believe that a crime was committed and that the accused committed it. If the Magistrate Judge finds such probable cause, the accused will be held for the action of the Grand Jury so that you can consider whether probable cause exists and an indictment should be issued.

*Grand Jury Charge* at 58-59. Thus, Grand Jurors are led to believe that a legal professional has already made the decision which is their sole undertaking.

The Magistrate Judge, after reviewing, *in camera*, the Grand Jury charge, addressed the probable cause and preliminary hearing complaints, however, she did not address the "disservice if you did not indict" language, or the blessing of the hearsay evidence, since the defense never knew it existed until the Magistrate Judge ordered production of the transcript. The Magistrate Judge found that while this preliminary hearing language was not accurate in this district, it did not render

15

*Charge* at 57-58 (instruction that "purpose is to determine whether there is sufficient evidence to justify a formal accusation against a person.  That is, to determine if there is probable cause to believe the person committed a crime. ); *id.* ("It is your duty to see it that indictments are returned only against those who you find probable cause to believe are guilty of a criminal offense under Federal law"); *id.* at 65 ("Your task is to determine whether the Government's evidence is sufficient to conclude that there is probable cause to believe that the accused is guilty of the offense charged"); *id.* at 64 (instructing grand jurors that "you should vote on the question of whether the evidence persuades you that a crime has probably been committed by the person or person accused . . . .") ; *id.* at 65 ("Your task is not to decide the guilt or innocence of the person charged"). The error in these instructions is compounded by the instruction noted above, that the Grand Jurors are told that it would be a "disservice" if they failed to indict if there was such "probable cause."

> Finally, the Grand Jurors are also improperly instructed that suspects are frequently taken before an officer known as a magistrate judge before you become involved in the case.  The United States Magistrate Judge holds a preliminary hearing to determine whether there is probable cause to believe that a crime was committed and that the accused committed it.  If the Magistrate Judge finds such probable cause, the accused will be held for the action of the Grand Jury so that you can consider whether probable cause exists and an indictment should be issued.

*Grand Jury Charge* at 58-59.  Thus, Grand Jurors are led to believe that a legal professional has already made the decision which is their sole undertaking.

The Magistrate Judge, after reviewing, *in camera*, the Grand Jury charge, addressed the probable cause and preliminary hearing complaints, however, she did not address the "disservice if you did not indict" language, or the blessing of the hearsay evidence, since the defense never knew it existed until the Magistrate Judge ordered production of the transcript.  The Magistrate Judge found that while this preliminary hearing language was not accurate in this district, it did not render

15

the Grand Jury charge unfair.  With respect to the probable cause language, the Magistrate Judge recommends denying the defense motion, relying upon a Ninth Circuit case, the subject of which is pending rehearing.  *See* R & R at 12.   This finding is incorrect under the applicable authorities cited in Mr. Knight's original motion.

## A.  The Magistrate Judge's Decision That The Grand Jury Instructions About "Probable Cause" and "Preliminary Hearings" Did Not Undermine Its Independence Is Incorrect.

In order to fulfill its role in "standing between the accuser and the accused," the Grand Jury must be "*independent* of both the prosecuting attorney and the court."   See United States v. Williams, 504 U.S. 36, 49 (1992) (emphasis added).   The Supreme Court has recognized "[t]he ~~necessity to society of an independent and informed grand jury."   Wood, 370 U.S. at 390; accord~~ Stirone v. United States, 361 U.S. 212, 218 (1960) (emphasizing that independence of the grand jury is essential to the "very purpose" of the grand jury right).  Indeed, "an infringement [of the grand jury's independence] may result in grave doubt as to a violation's effect on the grand jury's decision to indict." Bank of Nova Scotia v. United States, 487 U.S. 250, 259 (1988).  Telling the Grand Jury that would be doing a "disservice" if it refused to indict see also Gaither v. United States, 413 F.2d 1061, 1066 n.6 (D.C. Cir. 1969) ("Since it has the power to refuse to indict even where a clear violation of law is shown, the grand jury can reflect the conscience of the community in providing relief where strict application of the law would prove unduly harsh") (citation, internal quotation omitted).

In determining that the Grand Jury instructions at issue in this case did not undermine the Grand Jury's independence, the Magistrate Judge relied upon United States v. Marcucci, 299 f.3d 1196, (9th Cir. 2002) where many of the same type of instructions were at issue.  However, the Marcucci holding is currently the subject of a pending rehearing petition in the Ninth Circuit in

16

United States v. Navarro-Vargas, 382 F.3d 920 (9th Cir. 2004), and soon may no longer present

persuasive authority for these points. In dissent in Marcucci, Judge Hawkins addressed the very

instructions at issue in this case, noting:

> The instructions begin by telling the grand jurors that what would follow would outline their responsibilities. This prefatory emphasis is significant because the instructions go on to explain that "the purpose of the Grand Jury is to determine whether there is sufficient evidence to justify a formal accusation against a person." A grand juror paying close attention would conclude that the purpose of the grand jury is *singular* and that its discretion is constrained by the instruction.
>
> This impression is confirmed again later in the charge: "Your task is to determine whether the government's evidence as presented to you is sufficient to cause you to conclude that there is probable cause." While there is little doubt that this is, standing alone, a proper statement of law, the instruction seems to compel the grand jury to indict as long as probable cause exists:
>
>> You should vote to indict where the evidence presented to you is sufficiently strong to warrant a reasonable person's believing that the accused is probably guilty of the offense with which the accused is charged.
>
> These instructions are at odds with the constitutional history of the grand jury requirement. The grand jury's defining feature is independence. The Fifth Amendment deliberately inserts a group of citizens between the government's desire to bring serious criminal charges and its ability to actually do so.

Marcucci, 299 F.3d at 1167-1168 (Hawkins, J. dissenting). Judge Hawkins explains precisely why

the combination of these instructions improperly undermines the Grand Jury's independence. Here,

where the Grand Jury is also told it would be a "disservice" to refuse to indict, the error is

compounded a thousandfold.

By circumscribing the Grand Jury's role as only to make a determination of probable cause

and in the same breath telling it that Magistrate Judge has already found probable cause, that

instruction undermines the independence of the Grand Jury in violation of the principles set forth

in Vasquez v. Reyes-Hillery, 474 U.S. 254, 263 (1986). Placing limitations on the grand jurors

17

"run[s] counter to the whole history of the grand jury institution, in which lay [persons] conduct their inquiries unfettered by technical rules." Costello v. United States, 350 U.S. 359, 364 (1956). This is especially true in light of the above instruction telling the Grand Jury that failure to indict would be a disservice. Indeed, in Costello, the Supreme Court upheld a conviction where the evidence presented to the Grand Jury was solely "hearsay" evidence, the basis for the holding was the independence of the Grand Jury – trial judges could not limit the types of evidence presented to it. However, this case does not authorize the judges of this district to instruct the Grand Jury essentially that it is "o.k" for them to rely upon hearsay evidence without telling them that they can reject it as well. Use of the word "may" does not save this instruction. The Grand Juries of this district are misled into believing that this is an acceptable method of bringing criminal charges against fellow citizens of their community without being told that they can reject it. See Marcucci, 299 F.3d at 1170 (improper to extol virtues of federal prosecutors as candid public servants without telling grand jury that prosecutors do not have to present exculpatory evidence, can rely on unconstitutionally seized and otherwise inadmissible evidence).

In light of "[t]he grand jury's functional independence from the Judicial Branch," id. at 48, and the federal courts' "limited" power "to fashion, on their own initiative, rules of grand jury procedure," id. at 50, the decision to instruct the grand jurors that they were forbidden to consider certain topics is plainly wrong. Indeed, given the conflict between the Supreme Court's view of the institution, as expressed in Vasquez, and the view expressed in the instructions, the instructions "judicial[ly] reshap[e] ... the grand jury institution, substantially altering the traditional relationships between the prosecutor, the constituting court, and the grand jury itself." Id. Williams plainly forbids this "judicial reshaping" of the grand jury's role. Id. This error requires dismissal of the

18

indictment.

The instructions erroneously state that the grand jury's job is merely to ratify a probable cause determination already made by a judge.   Of course, there is no "preliminary hearing;" the magistrate judge's probable cause determination is undertaken *ex parte*.   See Fed. R. Crim. P. 4(a) and 5(a). But a grand juror, of course, would take the instructions as true, and believe that there has already been a probable cause determination, presumably after a hearing in which both parties participated, and that the defendant necessarily lost that battle.   Thus, not only is the grand jury asked merely to ratify a legal professional's determination, it is led to believe that the determination was made after a proceeding far more fair than the one in which the grand jurors are involved because the grand jurors proceed without any input from the defense.

In cases, such as Mr. Knight's, the Grand Jury is led to believe that its judgment is to be overseen by a magistrate judge, who after holding this mythical "preliminary hearing" will really decide whether there is probable cause to believe that Mr. Knight committed the crime.   Hence, misleading the Grand Jurors into believing that there is some sort of check on the exercise of their authority performed by the magistrate is error under the Supreme Court's cases.   While the Magistrate Judge recognized that this instruction should likely be changed, she would not grant relief on this ground.

Again, in order to fulfill its role in "standing between the accuser and the accused," the Grand Jury must be *independent* of both the prosecuting attorney and the court.   See Williams, 504 U.S. at 49.   These instructions obliterate that independence by setting up the grand jury as either a rubber stamp for judicial probable cause determinations or some step along the way to be checked and balanced by the magistrate judge.

19

The Magistrate Judge misread Mr. Knight's position as requesting that some particular form of instruction be given to the Grand Jury and noted that no such instruction was required. *See* R & R at 12 ("The authority relied upon by Defendant 'does not establish a constitutional right to have the grand jury charge include a statement that although the grand jury's function is to determine whether probable cause exists, it nevertheless has unlimited discretion to decide whether to indict even when it finds probable cause") (citing Marcucci, 299 F.3d at 1161*)*. This is not Mr. Knight's position – he does not seek specific instructions – he only seeks that his Grand Jury not be misinstructed regarding what they can and cannot consider and that their independence in making their determination not be undermined.[9]

## B. Telling the Grand Jury That Failure To Indict Would Be A Disservice Is An Egregious Infringement On Its Independence.

As noted, Mr. Knight's Grand Jury was instructed that "it would be a disservice if you did not indict where the evidence justifies an indictment . . . ." *Grand Jury Charge* at 68 (emphasis supplied). This is the most egregious of all the errors. It was neither noticed nor addressed by the Magistrate Judge's Report and Recommendation.

In Vazquez v. Hillery, the Supreme Court stated:

> The grand jury does not determine only that probable cause exists to believe that a defendant committed a crime, or that it does not. In the hands of the grand jury lies the power to charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a noncapital offense--all on the basis of the same facts. Moreover, *"[t]he grand jury is not bound to indict in every case where a conviction can be obtained.*

---

[9] The Marcucci majority opinion accused the defense in that case of making the same request for a specific instruction. 299 F.3d at 1161. Judge Hawkins' dissent notes that: "The appellants *actually* insist only on the following: that the instructions under consideration misleadingly and impermissibly conveyed to the grand jury that their sole function is to determine probable cause." 299 F.3d at 1167 (Hawkins, J. dissenting).

474 U.S. at 263 (citing <u>United States v. Ciambrone</u>, 601 F.2d 616, 629 (2d Cir.1979) (Friendly, J., dissenting) (emphasis supplied); <u>see also</u> <u>Gaither v. United States</u>, 413 F.2d 1061, 1066 n.6 (D.C. Cir. 1969) ( "Since it has the power toto refuse to indict even where a clear violation of law is shown, the grand jury can reflect the conscience of the community in providing relief where strict application of the law would prove unduly harsh.") (citation, internal quotation omitted); <u>Marcucci</u>, 299 F.3d at 1168 ("the grand jury's defining feature is its independence") (Hawkins, J., dissenting).  Again, in <u>Williams</u>, the Court states that the "Fifth Amendment's constitutional guarantees presuppose an investigative body acting independently of either prosecuting attorney or judge." 504 U.S. at 49 (quotation omitted).

Indeed, in <u>United States v. Cox</u>, 342 F.2d 167, 189-90 (5th Cir. 1965) (Wisdom, J., concurring specially), the court noted:

> By refusing to indict, the grand jury has the unchallengeable power to defend the innocent from government oppression by unjust prosecution.   And it has the equally unchallengeable power to shield the guilty, should the whims of the jurors or their conscious or subconscious response to community pressures induce twelve or more jurors to give sanctuary to the guilty.

The district court judge responsible for instructing the Grand Jury cannot, consistent with the law, admonish the Grand Jury that failure to return an indictment where there is sufficient "probable cause" to indict would be a "disservice." That is prohibited under <u>Vasquez</u>, <u>Williams</u>, and <u>Cox</u>, just to name a few authorities.[10]  Mr. Knight's indictment should be dismissed.

## IV. CONCLUSION

He objects to the Report and Recommendation of the Magistrate Judge for these reasons

---

[10] Mr. Knight argued that these errors were "structural" and not subject to any harmless error analysis.  The Magistrate Judge did not decide this issue.

and for all the reasons set forth in his original motions to dismiss the indictment which should be granted by this Court.

Respectfully submitted,

KATHLEEN M. WILLIAMS
FEDERAL PUBLIC DEFENDER

By:_____
Shereen J. Charlick
Supervisory Assistant Federal Public Defender
Court Assigned No. A5500158
150 West Flagler Street
Suite 1700
Miami, Florida 33130-1556
Tel: (305) 530-7000
Fax (305) 536-4559
Shereen_Charlick@fd.org

22

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent via Inter Agency Mail to: Karen Rochlin , Assistant United States Attorney, 99 N.E. 4th Street, Miami, Florida 33132 this _____ day of January 2005.

Shereen J. Charlick

1

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Empanelment of Federal Grand Jury 04-01
Federal Courthouse

May 6, 2004

APPEARANCES:

U.S. DISTRICT COURT
JUDGE JOAN LENARD

Richard Getchell,
Assistant United States Attorney.

Marvelle McIntyre-Hall,
Assistant United States Attorney.

Romona Chubbs

Grand Jury Coordinator.

56

Constitution of the United States, part of the Bill of Rights, provides in part that no person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a Grand Jury. An infamous crime is a serious crime that may be punished by imprisonment for more than one year.

An indictment is simply a written charge or accusation that a person has committed a crime.

We have two kinds of juries in the federal courts. First there is the Grand Jury. Then later there is the trial jury, sometimes known as the petit jury.

The trial jury consists of 12 members and determines whether a person accused of a crime is guilty or not guilty of the crime charged.

Federal jury trials take place in the courtroom such as this one in the presence of the judge, the jury, the attorneys, and the public where the accused may confront the witnesses against him or her and may be convicted only when each juror is

55

favor or affection or for any reward or hope or promise thereof, but in all your presentments and indictments to present the truth, the whole truth, and nothing but the truth, to the best of your skill and understanding.  If so, answer I do.

THE GRAND JURORS:  I do.

THE COURT:  You may be seated.

Mr. Arturo Martinez, the court has designated you, sir, as the foreperson of this Grand Jury.

And Miss Thelma Campbell, the court has designated you, ma'am, as the deputy foreperson of this Grand Jury.

At this time, I'm going to instruct you on the law that will govern your service as Grand Jurors.

As members of the Grand Jury, you're going to exercise authority and perform a public responsibility of the highest importance.

Indeed, you will carry out a function that is expressly provided for in the Constitution itself.

The Fifth Amendment to the

57

convinced of guilt beyond a reasonable doubt.

The other type of jury is the Grand Jury.  It functions at the beginning of the investigative or prosecutorial process and consists of 16 to 23 persons who have the responsibility of investigating charges of crime committed against the laws of the United States and if the result of the investigation justifies it, of making an accusation against a person by returning an indictment against him or her.

The decision to indict is normally based solely on the Government's evidence without the accused person having any opportunity to present his or her side of the case.

If an indictment is returned against an accused person, he or she becomes a defendant and in due course will be given the opportunity to plead guilty or not guilty to the indictment.

If the person pleads not guilty, he or she will then have a trial in open court before a trial jury.

Thus the purpose of the Grand Jury

58

is to determine whether there is sufficient evidence to justify a formal accusation against a person. That is, to determine if there is probable cause to believe the person committed a crime. If law enforcement officials were not first required to submit evidence of a person's guilt to an impartial Grand Jury, they would be free to arrest suspects and bring them to trial no matter how little evidence existed to support the charges.

As members of the Grand Jury, then, you stand in a very real sense between the government and the accused. A federal Grand Jury must never be made an instrument of private prejudice, vengeance, or malice. It is your duty to see to it that indictments are returned only against those who you find probable cause to believe are guilty of a criminal offense under Federal Law.

The case that comes before you will arise in various ways. Frequently suspects are arrested on the scene, so to speak, during or shortly after an alleged crime is committed. They are taken before a judicial

59

officer known as a magistrate judge before you become involved in the case.

The United States magistrate judge holds a preliminary hearing to determine whether there is probable cause to believe that a crime was committed and that the accused committed it.

If the magistrate judge finds such probable cause, the accused will be held for the action of the Grand Jury so that you can consider whether probable cause exists and an indictment should be issued.

Other cases will come to you before an arrest, but after an investigation has been conducted by a governmental agency such as the Federal Bureau of Investigation, the Treasury Department, Postal Authorities, or other Federal Law enforcement officials.

These cases are then brought to your attention by the United States Attorney or an Assistant United States attorney, or attorneys employed by the Department of Justice. 16 of the 23 members of the Grand Jury constitute a quorum for transacting business.

60

If fewer than 16 members are present even for a moment, the proceedings of the Grand Jury must stop.  This shows how important it is that each of you contentiously attend the meetings.  If an emergency prevents your personal attendance at a meeting, you must promptly advise the Grand Jury foreperson who has the authority to excuse you from attendance.  If your absence will prevent the Grand Jury from acting, you should, if humanly possible, attend the meeting.

You have the right to regulate your sessions to accommodate within reason the convenience of yourselves and the government attorneys, but you have the overall obligation to be available for duty at all times during the term for which you have been selected.

The United States Attorney and the Department of Justice attorneys represent the government in the prosecution of parties charged with committing offenses or crimes against the laws of the United States.  These government attorneys will present the

61

accusations that the government desires to have you consider.  They will point out to you the laws that the government believes have been violated and they will subpoena for you such witnesses as they may consider important and also such other witnesses as you may request.

In other words, the government attorneys will act as your legal advisors in the performance of your duties.

The evidence you will consider will normally consist of oral testimony of witnesses and written documents.  Each witness will appear before you separately. When the witness first appears before you, he or she will be sworn in by the Grand Jury -- sworn in by the Grand Jury foreperson.

After being sworn, the witness may be questioned.  Ordinarily the government attorney questions the witness first.  Next, the foreperson may question the witness, followed by the other members of the Grand Jury if they so desire.

Witnesses should be treated courteously when they appear before you.

62

Questions should be put to them in an orderly fashion. If you have any doubt about the propriety of any question, you should seek the advice of the government attorney. If necessary, a ruling may be obtained from the court.

As you listen to witnesses presented to you in the Grand Jury room and hear their testimony, remember that you are the judge of each witness' credibility. You may believe the witness' testimony or you may not believe it in whole or in part. Determining the credibility of a witness involves a question of fact, not a question of law.

It is for you to decide whether you believe the person's testimony. You may consider in that regard whether the witnesses are personally interested in the outcome of the investigation, whether their testimony has been corroborated by other witnesses or circumstances, what opportunity they have had for observing or acquiring knowledge concerning the matters about which they testify, the reasonableness or probability of the testimony they relate to you, and their

63

manner and demeanor in testifying before you.

Hearsay testimony, that is testimony as to facts not known by a witness through personal knowledge, but told to the witness by others, may be considered by you and may provide a sufficient basis for returning an indictment against an accused party.

You must be satisfied only that there is evidence against the accused showing probable cause.  Even if such evidence is composed of hearsay testimony, that might or might not be admissible in evidence at trial.

Witnesses are not permitted to have counsel with them in the Grand Jury room. However, the law does permit witnesses to confer with their counsel outside the Grand Jury room.  You should draw no adverse inference if a witness chooses to exercise this right to confer with counsel outside the Grand Jury room.

An appearance before Grand Jury may present complex legal problems requiring the assistance of counsel.  There are also other rights that every witness before a Grand Jury possesses.  These include the Fifth Amendment

64

right to refuse to answer any question if the answer might tend to be incriminating and the right to know that anything the witness says may be used against him or her.

Frequently charges are made against more than one person. It will be your duty to examine the evidence as it relates to each person and to make your finding as to each person.

In other words, where charges are made against more than one person, you may indict all of the persons or only those persons who you believe properly deserve indictment.

After you have heard the evidence in a particular matter, you will then proceed to deliberate as to whether the accused person or persons should be indicted. No one other than your own members may be present while you are deliberating or voting.

After all persons other than the Grand Jury members have left the room, you should fully discuss and then vote on the question of whether the evidence persuades you that a crime has probably been committed

65

by the person or persons accused and that an indictment should be returned.

To return an indictment charging an individual with an offense, it is not necessary that you find that the accused is guilty beyond a reasonable doubt.  Remember, you are not a trial jury.  And your task is not to decide the guilt or innocence of the person charged.

Your task is to determine whether the Government's evidence is sufficient to conclude that there is probable cause to believe that the accused is guilty of the offense charged.  That is, whether the evidence presented to you is sufficiently strong to cause a reasonable person to believe that the accused is probably guilty of the offense charged.

Each Grand Juror has the right to express his or her view on the matter under consideration.  Only after all Grand Jurors have been given an opportunity to be heard will the vote be taken.

Remember, at least 16 jurors must be present at all times.  And at least 12

66

members must vote in favor of an indictment before one may be returned.  I'm going to repeat that again 'cause it's important.

Remember, at least 16 jurors must be present at all times, and at least 12 members must vote in favor of an indictment before one may be returned.

The foreperson should designate another juror to serve as secretary, and the secretary should keep a record of the number of jurors concurring in the return of every indictment.  The voting record for each indictment shall not include the names of the jurors, but must indicate the number of affirmative votes.

If after deliberation 12 or more members of the Grand Jury believe that an indictment is warranted, then the government attorney should be requested to prepare the formal written indictment, assuming a proposed indictment has not already been prepared.  The indictment will be in the name of the United States, will designate the defendant or defendants, will set forth the date and place of the alleged offense, will

assert the circumstances making the alleged conduct criminal, and will identify the criminal statute violated.

The foreperson will endorse the indictment as a true bill and sign it in the space followed by the word foreperson.

It is the duty of the foreperson to endorse every indictment voted for by at least 12 Grand Jurors, whether the foreperson voted for or against the indictment. The Grand Jury will then return the indictment to the court for action.

If less than 12 members of the Grand Jury vote in favor of an indictment, the foreperson will endorse the indictment with the words not a true bill, and return it to the court and the court will impound it.

Indictments will be presented to a judge or magistrate judge in open court by your foreperson at the conclusion of each deliberative session.

Just as the English Grand Jury was independent of the King, the Federal Grand Jury under the United States Constitution is independent of the United States Attorney as

68

well as other government lawyers.  The Grand Jury is not an arm of the Federal Bureau of Investigation, it is not an arm of the Internal Revenue Service, it is not an arm of the United States Attorney's office.  While you would perform a disservice if you did not indict where the evidence justifies an indictment, you would violate your oath if you merely rubber stamped indictments brought before you by the government representatives.

As a practical matter, however, you must work closely with the government attorneys.  The government lawyer will provide you with important service in helping you to find your way when confronted with complex legal or factual matters.

It is entirely proper that you should receive this assistance and advice. If you should ever have a question for the court or desire to return an indictment to the court, then you will assemble in the courtroom for those purposes.  However, each juror is directed to report immediately to the court any attempt by any person who under any pretense whatsoever tries to approach you

69

for the purpose of gaining any information of any kind concerning the proceedings of the Grand Jury or to influence you in any manner.

Your proceedings are secret and must remain secret. Unless the court determines that the proceedings should be revealed in accordance with the law. There are several important reasons for this secrecy requirement.

First, a premature disclosure of a Grand Jury action may frustrate the investigation by giving the accused an opportunity to escape and become a fugitive or to destroy evidence.

Second, if the witness' testimony is disclosed, the witness may be subject to intimidation, retaliation, or other tampering before testifying at trial.

Third, the secrecy requirement protects an innocent person who has been investigated and cleared by the Grand Jury. In the eyes of some investigation alone suggests guilt. Thus a great injury can be done to the good name and standing of anyone, even though they are not indicted if it

70

becomes known that there was an investigation about them.

And fourth, the secrecy requirement helps protect the members of the Grand Jury themselves from improper contact by those under investigation.

For all these reasons, therefore, the secrecy requirement is of the utmost importance and must be regarded by you as an absolute duty.  You must be careful to preserve the secrecy of your proceedings by abstaining from communicating Grand Jury business to your families, friends, representatives of the news media, or any other persons.  Grand Jurors may discuss these matters only amongst themselves and only in the grand jury room.

However, you may disclose matters that occur before the Grand Jury to attorneys for the government for such attorneys to use in performing their duties.  The content of your deliberations and the vote of any juror may not, however, be disclosed even to the government attorneys.

When is this Grand Jury to begin?

71

MR. GETCHELL: Your Honor, this Grand Jury will have its first session next Thursday.

THE COURT: And where, so they know where they are to report? Where is the grand jury room?

MS. MCINTYRE-HALL: Your Honor, we have a Grand Jury clerk here who will escort the Grand Jury to the grand jury room. It's on the ninth floor in the building right across from this courthouse.

A lot of you were already up there for the jury pool room this morning, so it's on the ninth floor. The doors are marked Grand Jury, so it's very visible. That's the section where you will be going.

THE COURT: Okay. After every trial for petit jury, I go into the jury room and meet with my jurors and give them a certificate of appreciation. And I tell each and every one of them, and I'm going to tell you the same thing, before September 11th, I told every jury that jury service is the most important duty that you as a citizen are called upon to perform in peace time and how

72

lucky we were to be in peace time.  We are no longer in peace time.  But that should not take away from the importance of the service that you are to perform for your country.

So I commend each and every one of you as you proceed along this path to serve your country as Grand Jurors.  Thank you.

We are in recess.

* * * * * * * * * * * * * * * * * * * * * *

MS. MCINTYRE-HALL:  Welcome to the Grand Jury suite and Grand Jury area.  This is not necessarily the grand jury room where you will be having your sessions, but it was the one that we had available for today.

But as you saw when we came in, that there was a prisoner being interviewed.  And sometimes they bring the prisoners over and when these spaces are unoccupied they can interview prisoners here because we can't take them anywhere else.

So, it's just one of those kind of logistic things that, you know, sometimes happens.  It was overbooked.  And so we apologize.

My name is Marvelle McIntyre-Hall